# DEA raids Urgent Care, doc's office

Print this story   Post a Comment     ShareThis

**EXHIBIT 1**

By Katharhynn Heidelberg
Daily Press Senior Writer
Published/Last Modified on *Wednesday, October 14, 2009 8:20 PM MDT*

MONTROSE — Offices of a Montrose doctor involved with Urgent Care facilities here and in Grand Junction were raided by federal agents yesterday.

Dr. Sam Jahani is already facing a lawsuit over an ex-employee's claims that he fired her last year for her intended whistleblower activities —claims that Jahani denied.

Wednesday, the Drug Enforcement Administration served warrants at Montrose Urgent Care, Grand Junction Urgent Care and Jahani's Delta office. According to the U.S. Attorney's Office, agents were seeking medical records kept by Jahani, who specializes in internal medicine, and Dr. Eric Peper of Grand Junction. "Medical records were seized or are being seized," U.S. Attorney's Office spokesman Jeff Dorschner said Wednesday of the DEA's investigation. "There's virtually nothing I can say regarding this."

Dorschner said no arrests have been made Wednesday. He could not say why the feds were looking at Jahani and Peper's records.

Jahani was not at his home Wednesday afternoon, but law enforcement officials and agents from the Internal Revenue Service were, carrying out additional warrants.

At Montrose Urgent Care, a uniformed Montrose Police officer and local task force agent Jim Fuller stood guard while investigators inside continued to seize paperwork.

Fuller said the Urgent Care was closed and that patients are being referred to other healthcare facilities.

Federal and local law enforcement officers were on hand at the home of Montrose resident Dr. Sam Jahani Wednesday afternoon off of LaSalle Road. (William Woody / Daily Press)

(Use arrows above to view more photos)

He referred all questions about the seizures to the U.S. Attorney's Office. That office said in a news release that patients of Jahani or Peper who need a copy of their medical records should have a medical practitioner call (720) 895-4269.

Records will be provided only to a medical practitioner and the practitioner will have to provide a HIPPA release when making the request.

While little information has surfaced about the nature of the DEA's investigation, U.S. District Court records show a civil suit brought by Jahani's former office manager in Delta, as well as a past federal prosecution in Texas — since settled — for alleged Medicare fraud.

His former office manager, Tonya Creel of Montrose, sued this year after having been fired last December. She claimed Jahani retaliated against her because she intended to blow the whistle on the way Jahani allegedly "upcoded" Medicare, billing it for a higher level of care than was actually provided.



The suit claims relief under a section of the U.S. Code's False Claims Act.

Jahani denied Creel's claims in subsequent filings.

"The potential False Claims Act violation as to which Creel was acting in furtherance involves the defendants overcharging Medicare for physician services Jahani, or other Urgent Care physicians, provided and the billing of Medicare for patient visits at the hospital and at nursing homes which Jahani did not actually make," Creel's complaint stated.

"The information and belief is Creel's knowledge of the defendants' extensive efforts to keep their wrongful Medicare billing practices secret, as well as the fact that at the time of Creel's termination reasonable efforts had not been made by the defendants to stop their wrongful practices."

The suit also alleges defamation.

Jahani denied Creel's allegations and countersued, claiming Creel did not correctly deposit cash receipts. His counter complaint alleged theft and said Creel failed to state a claim for which the court can grant relief. Creel's claims, the document says, are barred because of her "intentional acts."

"Defendants reasonably investigated all information that was presented by Creel during her employment," the answer stated.

Jahani, along with IHS Hospital of Dallas, was sued in 2003 under the False Claims Act, other U.S. District Court records show.

He settled his case with the U.S. government in 2004.

The settlement included a Corporate Integrity Agreement that required an independent review organization to audit samples of his paid Medicare claims.

Creel's suit alleged records intended for the auditor were altered.

In a Wednesday U.S. District Court filing, Creel and Jahani agreed to a protective order pertaining to confidential information.

Print this story   Post a Comment        ShareThis

Copyright © 2009 Montrose Daily Press

Westlaw.

Page 1

Not Reported in F.Supp.2d, 2008 WL 1782637 (D.Colo.)
(Cite as: 2008 WL 1782637 (D.Colo.))

**H**
Only the Westlaw citation is currently available.

United States District Court,
D. Colorado.
Thomas SEVERINO, Sr., Thomas Severino, Jr., Dawn Poreda, Glenn Poreda, Joseph Honahan, Kristin Honahan, and Jeffrey Owens, Plaintiffs,
v.
KLYTIE'S DEVELOPMENTS, INC., Efrat Friedman, Hidai Friedman, Klytie's Developments, LLC, and Jason J. Sharkey, Defendants.
Civil Action No. 07-cv-01318-WDM-KMT.

April 17, 2008.

James A. Jablonski, Matthew J. Casebolt, Rumler Tarbox Lyden Law Corporation, P.C., Denver, CO, for Plaintiffs.

Klytie's Developments, Inc., North East, Canada, pro se.

Efrat Friedman, Malibu, CA, pro se.

Hidai Friedman, Malibu, CA, pro se.

Martin Melville Berliner, Berliner Mcdonald, P.C., Greenwood Village, CO, Mark L. Fulford, Sherman & Howard, L.L.C., Denver, CO, for Defendants.

### ORDER

KATHLEEN M. TAFOYA, United States Magistrate Judge.

*1 This matter is before the court on "Motion for Stay by Defendant, Jason Sharkey, and Submission in Support of Motion for Stay Filed by Klytie's Defendants" ("Motion for Stay" [Doc. No. 35, filed October 24, 2007] ). "Plaintiffs' Response to Defendant Sharkey's Motion for Stay" was filed November 2, 2007 [Doc. No. 41].

### Procedural History

The Complaint in this action was filed on June 22, 2007 alleging various securities violations, theft, fraud, breach of contract, deceptive trade practices and unjust enrichment. On September 13, 2007, Jason J. Sharkey filed crossclaims against Hidai Friedman and Efrat Friedman for fraudulent misrepresentation and concealment, claiming the Friedmans were liable to him for all or part of any damages ultimately payable to plaintiffs. A Canadian receivership purported to bar any action against the Friedmans and their companies, Klytie's Developments, Inc. and Klytie's Developments, LLC (all four hereinafter referred to as "Klyties Defendants") and prohibited any distribution of assets worldwide, including settlement sums which had already been promised to the plaintiffs in this action. [Doc. No. 27, filed October 8, 2007]

On or about October 19, 2008, Jason S. Sharkey and Hidai Friedman were indicted by a grand jury in the First Judicial District, State of Colorado in Case No. 07CR01, for crimes arising out of the same transactions involved in the instant civil case. Mr. Sharkey moved to stay this civil action as a result.

Ultimately, the Klyties Defendants filed for bankruptcy protection in the United States Bankruptcy Court, for the District of Colorado and the Canadian receivership was recognized by the bankruptcy court. As a result of the automatic stay mandated by the bankruptcy filing, this court granted a stay in this case as to the Klyties Defendants, including the cross claims of Mr. Sharkey. [Doc. No. 81, filed March 28, 2008]. At that time, Jason Sharkey was the sole remaining defendant as to whom the proceedings had not been stayed.

On April 4, 2008 this court granted plaintiffs' motion to file an amended Complaint and join other parties. As of the date of this Order, no return of service has been filed on any of the newly joined

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.



EXHIBIT 2

Not Reported in F.Supp.2d, 2008 WL 1782637 (D.Colo.)
**(Cite as: 2008 WL 1782637 (D.Colo.))**

Page 2

parties.

**Analysis**

The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance. *Kansas City Southern Ry. Co. v. United States,* 282 U.S. 760, 763 (1931).

In assessing the propriety of a stay, this court must consider: whether the movant is likely to prevail in the related proceeding; whether, absent a stay, any party will suffer substantial or irreparable harm; and, the public interests at stake. *Landis v. North American Co.,* 299 U.S. 248, 254 (1936); *United Steelworkers of America v. Oregon Steel Mills, Inc.,* 322 F.3d 1222, 1227 (10th Cir.2003); *Battle v. Anderson,* 564 F.2d 388, 397 (10th Cir.1977).

**\*2** In this case, two issues eclipse all others in deciding on the propriety of a stay. The first is the grand jury indictment of Mr. Sharkey and cross-defendant, Hidai Friedman. The second is the grant of a stay of this litigation as to the Klyties Defendants and the effect of that stay on Mr. Sharkey's crossclaims.

When considering a stay in a matter involving parallel criminal and civil proceedings, the primary debate centers on the criminal defendant's potential waiver or invocation of his Fifth Amendment rights. "The Constitution [ ] does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings." *Securities Exchange Commission v. Dresser Industries Inc.,* 628 F.2d 1368, 1375 (D.C.Cir.1980) (citing *Baxter v. Palmigiano,* 425 U.S. 308, 317-19 (1976)). The *Dresser* court stated, "a court may decide in its discretion to stay civil proceedings, postpone civil discovery, or impose protective orders and conditions when the interests of justice seem to require such action." *Id.* at 1375. *See also United States v. Kordel,* 397 U.S. 1, 11-12 (1970) (parallel civil and criminal actions might, in "special circumstances," raise constitutional problems and a defendant might be able to argue that his due process and self-incrimination rights require the stay of proceedings in the civil action.)

In *Cruz v. County of Dupage,* 1997 WL 370194, \*1 (N.D. Ill. June 27, 1997), the court aptly observed the "ultimate question ... is whether the court should exercise its discretion in order to avoid placing the defendants in the position of having to choose between risking a loss in their civil cases by invoking their Fifth Amendment rights, or risking conviction in their criminal cases by waiving their Fifth Amendment rights and testifying in the civil proceedings." In the view of the *Cruz* court, the "severe burden" defendants would face in fighting both proceedings simultaneously outweighed the potential prejudice to the private plaintiffs arising from a stay. *Id.; see also Brumfield v. Shelton,* 727 F.Supp. 282, 284 (E.D.La.1989) ("In a case where there is a real and appreciable risk of self-incrimination, an appropriate remedy would be a protective order postponing civil discovery until termination of the criminal action."); *Brock v. Tolkow,* 109 F.R.D. 116, 120 (E.D.N.Y.1985) ("A stay of civil discovery until after criminal proceedings are complete will enable [defendants] to defend the civil case vigorously without fear of subsequent prosecution").

In terms of the quandary Sharkey encounters, the court notes at the outset that it is not unconstitutional to force a defendant to make this Hobbesian choice. *In re CFS-Related Securities Fraud Litigation,* 256 F.Supp.2d 1227, 1236 (N.D.Okla., 2003). Balanced against the constitutional dilemma faced by Mr. Sharkey is that "[t]he right to proceed in court should not be denied except under the most extreme circumstances." *Commodity Futures Trading Com'n v. Chilcott Portfolio Management, Inc.,* 713 F.2d 1477, 1484 (10th Cir.1983) (*quoting Klein*

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 1782637 (D.Colo.)
(Cite as: 2008 WL 1782637 (D.Colo.))

Page 3

v. *Adams & Peck,* 436 F.2d 337, 339 (2d Cir.1971). In other words, stays of the normal proceedings of a court should be the exception rather than the rule. *See, e.g., Trustees of the Plumbers and Pipefitters Nat'l Pension Fund v. Transworld Mechanical, Inc.,* 886 F.Supp. 1134, 1139 (S.D.N.Y.1995); *In re Par Pharmaceutical Inc.,* 133 F.R.D. 12, 13 (S.D.N.Y.1990).)

**\*3** In determining whether to stay civil proceedings, courts balance the burden of proceeding with both cases simultaneously against the harm to the civil opponent, in this case the plaintiffs, if a stay were granted. *See* Judge Milton Pollack, Presentation at the Transferee Judges' Conference, PARALLEL CIVIL AND CRIMINAL PROCEEDINGS, 129 F.R.D. 201, 203 (1989). A motion for a stay entails a case-by-case, fact-specific inquiry, with courts frequently citing some combination of six factors in determining whether to enter a civil stay: the extent to which the issues in the criminal case overlap with those presented in the civil case; the status of the case, including whether the defendants have been indicted; the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; the private interests of and burden on the defendants; the interests of the courts; and the public interest. *See Transworld,* 886 F.Supp. at 1139; *see also In Re WorldCom, Inc. Securities Litigation,* 2002 WL 31729501 (S.D.N.Y. Dec. 5, 2002); *County of Dupage,* 1997 WL 370194, at \*2; *Digital Equip. Corp. v. Currie Enterprises,* 142 F.R.D. 8, 12 (D.Mass.1991); *White v. Mapco Gas Products Inc.,* 116 F.R.D. 498, 502 (E.D.Ark.1987).)

In this case, the facts and issues intrinsic in both cases involving Mr. Sharkey are virtually identical. The indictment has been returned and, according to the parties, trial is imminent. That the criminal case is so postured is critical because it dictates both the degree of risk of self-incrimination and the length of potential delay to the civil case.

The strongest case for a stay of discovery in the civil case occurs during a criminal prosecution after an indictment is returned. The potential for self-incrimination is greatest during this stage, and the potential harm to civil litigants arising from delaying them is reduced due to the promise of a fairly quick resolution of the criminal case under the Speedy Trial Act.

*Dresser,* 628 F.2d at 1375-76. Numerous courts, including the Southern District of New York in the *WorldCom* civil litigation, have granted civil stays in the post-indictment context. *In Re WorldCom, Inc.,* 2002 WL 31729501 at \*9; *Volmar Distributors Inc. v. New York Post Co. Inc.,* 152 F.R.D. 36 (S.D.N.Y.1993); *Midas International Corp. v. GV & G Trans. Services,* 1987 WL 18916 (N.D.Ill. Oct. 19, 1987); *Fidelity Funding of California v. Reinhold,* 190 F.R.D. 45, 48 (E.D.N.Y.1997) (staying the civil case against the defendant who was under indictment while denying a stay as to his unindicted civil co-defendant); *Gala Enterprise Inc. v. Hewlett Packard Co.,* 1996 WL 732636, \*2 (S.D.N.Y. Dec. 20, 1996) ("Pre-indictment requests of a stay of civil proceedings are generally denied").)

Not to be discounted in the analysis is the fact that Mr. Sharkey has filed pending cross claims against Defendant Hidai Friedman, his co-defendant in the criminal case. All proceedings in this case are stayed with respect to Mr. Friedman by operation of the automatic bankruptcy stay and this court's concomitant order. Therefore, Mr. Sharkey is doubly prejudiced by the need to testify in the civil action to effectively prosecute his cross claims concerning the directives he received from others, including Hidai Friedman, and the need to protect his Fifth Amendment rights against unfavorable inference in the civil case or waiver.

**\*4** The plaintiffs are already delayed by the required stay as to the Klyties Defendants and adding Mr. Sharkey to this list will cause little, if any, further prejudice. Given the intertwined nature of the case as to Mr. Sharkey and the Klyties Defendants, judicial interests are also served by proceeding against all defendants at the same time.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 1782637 (D.Colo.)
**(Cite as: 2008 WL 1782637 (D.Colo.))**

Page 4

**ORDER:**

I find, based on the facts of this case, that while any stay causes inconvenience and delay, the protection of the defendant's constitutional right against self-incrimination and his need to preserve his defense and cross claims are the more important considerations, especially since the criminal case is likely to be resolved before the bankruptcy stay on the other Klytie Defendants is lifted and before other proposed parties and claims are officially served and joined.

It is therefore, ORDERED Plaintiffs' Motion for Stay by Defendant, Jason Sharkey, and submission in Support of Motion for Stay Filed by Klytie's Defendants [Doc. No. 35] is GRANTED. The parties are directed to file a Notice with the court within ten days of any disposition of criminal case 07CR01, First Judicial District, State of Colorado with respect to either of the named defendants.

D.Colo.,2008.
Severino v. Klytie's Developments, Inc.
Not Reported in F.Supp.2d, 2008 WL 1782637 (D.Colo.)

END OF DOCUMENT

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

Page 1

Not Reported in F.Supp., 1997 WL 370194 (N.D.Ill.)
(Cite as: 1997 WL 370194 (N.D.Ill.))

Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois,
Eastern Division.

Rolando CRUZ, Plaintiff,
v.
COUNTY OF DUPAGE, et al., Defendants.
No. 96 C 7170.

June 27, 1997.

*MEMORANDUM OPINION AND ORDER*

COAR, District Judge.

*1 Before the court is defendants' motion to stay discovery pending the resolution of the criminal prosecutions related to the above-captioned matter. Also before the court is Gayle M. Franzen's motion for injunctive relief (i.e., to disqualify defendants' counsel). For the following reasons, defendants' motion will be granted. Franzen's motion will be denied.[FN1]

> FN1. This memorandum opinion and order applies to the identical motions pending in two related cases also before this court: *Buckley v. County of DuPage et al.,* No. 88 C 1939 and *Hernandez v. County of DuPage et al.,* No. 96 C 8030.

I. MOTION TO STAY DISCOVERY

A. Factual Background

On December 12, 1996, a DuPage County Special Prosecutor announced that seven current and former officers and employees of DuPage County had been indicted for their actions related to the investigation and prosecution of the murder of Jeanine Nicarico in February 1983. Among those indicted are Thomas Knight, Dennis Kurzawa, James Montesano, Thomas Vosburgh, and Robert Winkler. These individuals are also defendants in at least one of the civil rights lawsuits that have been filed by Stephen Buckley, Rolando Cruz, and Alejandro Hernandez and that are currently before this court.

B. Legal Standards for Motions to Stay

The court has the inherent power to stay proceedings in a case, and its decision will not be disturbed absent an abuse of discretion. *See Landis v. North American Co.,* 299 U.S. 248, 254-55, 57 S.Ct. 163, 81 L.Ed. 153 (1936) (Cardozo, J.); *Afro-Lecon, Inc. v. United States,* 820 F.2d 1198 (Fed.Cir.1987); *Campbell v. Eastland,* 307 F.2d 478 (5th Cir.1962), *cert. denied,* 371 U.S. 955, 83 S.Ct. 502, 9 L.Ed.2d 502 (1963). Yet, "it is not unconstitutional to force a litigant to choose between invoking the fifth amendment in a civil case, thus risking a loss there, or answering the questions in the civil context, thus risking subsequent criminal prosecution." *Brock v. Tolkow,* 109 F.R.D. 116, 119 (E.D.N.Y.1985) (citing *Baxter v. Palmigiano,* 425 U.S. 308, 318-19, 96 S.Ct. 1551, 1557-58, 47 L.Ed.2d 810 (1976) (citations omitted)). "Nevertheless, a court may decide in its discretion to stay civil proceedings, postpone civil discovery, or impose protective orders and conditions 'when the interests of justice seem[ ] to require such action....' " *Securities & Exchange Comm'n v. Dresser Indus., Inc.,* 628 F.2d 1368, 1375 (D.C.Cir.1980) (quoting *United States v. Kordel,* 397 U.S. 1, 12 n. 27, 90 S.Ct. 763, 770 n. 27, 25 L.Ed.2d 1 (1970) (citations omitted)); *see also Bruner Corp. v. Balogh,* 819 F.Supp. 811, 813 (E.D.Wis.1993) (setting out standards). The ultimate question, therefore, is whether the court should exercise its discretion in order to avoid placing the defendants in the position of having to choose between risking a loss in their civil cases by invoking their Fifth Amendment rights, or risking conviction in their criminal cases by waiving their

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

EXHIBIT 3

Not Reported in F.Supp., 1997 WL 370194 (N.D.Ill.)
(Cite as: 1997 WL 370194 (N.D.Ill.))

Page 2

Fifth Amendment rights and testifying in the civil proceedings.

C. Discussion

Relying on the D.C. Circuit's decision in *Dresser Industries,* defendants argue that a stay is appropriate because this case is "the prototype of the 'strongest case' for deferment." (Def. Mem., at 9). In *Dresser Industries,* the court stated that

*2 the strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter. The noncriminal proceeding, if not deferred, might undermine the party's Fifth Amendment privilege against self-incrimination, expand rights of criminal discovery beyond the limits of Federal Rule of Criminal Procedure 16(b), expose the basis of the defense to the prosecution in advance of criminal trial, or otherwise prejudice the case. If delay of the noncriminal proceeding would not seriously injure the public interest, a court may be justified in deferring it.... In some such cases, however, the courts may adequately protect the government and the private party by merely deferring civil discovery or entering an appropriate protective order.

*Dresser Indus.,* 628 F.2d at 1376 (citations omitted). The *Dresser Industries* court found that the facts of that case counseled against staying the underlying administrative investigation: no indictments had been returned and thus no Fifth Amendment privilege was implicated. *Id.*

Plaintiffs' argument in opposition to defendants' motion to stay discovery is fourfold: (1) a stay would be severely prejudicial to plaintiffs' cases; (2) the public's interest in prompt disposition of this litigation would be impaired; (3) there is only "some overlap" between these cases and the criminal proceedings; and (4) the criminal cases are proceeding slowly.

From the cases cited by the parties, the court has extracted some general guidelines for when a stay should be granted. These include (1) whether the two actions involve the same subject matter; (2) whether the two actions are brought by the government; (3) the posture of the criminal proceeding; (4) the effect on the public interests at stake if a stay were to be issued; (5) the interest of the plaintiffs in proceeding expeditiously with this litigation and the potential prejudice to plaintiffs of a delay; and (6) the burden that any particular aspect of the proceedings may impose on defendants. *See Nowaczyk v. Matingas,* 146 F.R.D. 169, 174 (N.D.Ill.1993) (citing *White v. Mapco Gas Products, Inc.,* 116 F.R.D. 498, 502 (E.D.Ark.1987)); *Admiral Ins. Co. v. Federal Security, Inc.,* 94 C 5649, 1996 WL 139243, *1-2 (N.D.Ill. Mar.26, 1996) (Magistrate's Report and Recommendation).

Subject Matter of the Actions. Plaintiffs argue that there is only "some overlap" between the two actions. This is technically correct. The grand jury indicted some of the defendants in this action, charging them with committing perjury and conspiring to commit perjury in relation to two matters: (1) an alleged "vision statement" by Cruz and (2) a purported inculpatory statement by Cruz while he was in custody. Plaintiffs argue that this conduct is only part of the wrongdoing that defendants are alleged to have committed. Despite this, the court finds that the civil and criminal proceedings do in fact involve the same subject matter, i.e., the investigation into and prosecution of the abduction, molestation, and murder of Jeanine Nicarico.

*3 Government Involvement. When both actions are brought by the government, there is a danger that the government may use civil discovery to obtain evidence and information for use in its criminal prosecution, and by doing so, circumvent the Fifth Amendment rights against self-incrimination. Here, the actions are not both being brought by the government, and the cases before this court are purely between private litigants. Thus, the danger that is

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 370194 (N.D.Ill.)
(Cite as: 1997 WL 370194 (N.D.Ill.))

Page 3

inherent when the government is bringing both actions is not present. Yet, it must be noted that numerous cases have found it appropriate to stay civil proceedings, even when no governmental entity is represented in the civil action. *See Andover Data Serv. v. Statistical Tabulating Corp.,* 876 F.2d 1080 (2d Cir.1989); *Nowaczyk v. Matingas,* 146 F.R.D. 169 (N.D.Ill.1993); *Brumfield v. Shelton,* 727 F.Supp. 282 (E.D.La.1989); *Golden Quality Ice Cream Co. v. Deerfield Specialty Papers, Inc.,* 87 F.R.D. 53 (E.D.Pa.1980).

Posture of the Criminal Proceedings. While plaintiffs have represented to the court that the criminal trials related to these defendants will not take place until "sometime next year," the overall posture of the criminal proceedings suggests that a stay of discovery is appropriate. In the cases in which a motion to stay has been denied, there has usually only been a *threat* of indictment of the civil litigants. *See, e.g., Dresser Indus.,* 628 F.2d at 1376. In these cases, however, five of the civil defendants have already been indicted in criminal proceedings. While it is unclear as to when the criminal defendants will go to trial, the fact that indictments have been issued suggests that a stay would be appropriate.

Public Interests at Stake. The fourth factor for the court to consider is the effect on the public interests at stake if a stay were to be issued. The relevant inquiry here is whether a stay would enable the defendants to engage in some continuing wrong. The court finds the possibility of this to be slight. Many of the civil defendants no longer hold official government positions. In addition, the intense media scrutiny that these cases have received suggests that future acts similar to the one alleged in the civil complaints would not go unnoticed.

Interests of the Plaintiffs. The interests articulated by plaintiffs are that they have already waited many years to be able to bring the current actions and that they would be severely prejudiced by having to wait any longer. While the court is sympathetic to this argument, it nevertheless notes that this is only one of the relevant factors to be considered in determining whether to grant defendants' motion to stay. Plaintiffs also argue that they are prejudiced because defendants were dilatory in bringing this motion. Whether or not this is the case, the court finds that the timing of defendants' motion is not prejudicial to plaintiffs. No discovery has taken place since plaintiffs Cruz and Hernandez filed their cases, and thus neither side has gained an advantage in that area.

*4 Burden on Defendants. As noted in *Dresser Industries,* defending a civil action involving the same matter for which a party is under indictment is a severe burden. In these cases, there is a distinct possibility rights of the defendants will be prejudiced if discovery is allowed to continue because there is a distinct possibility that the parallel proceedings would undercut the defendants' privileges against self-incrimination.

For the reasons stated above, the court exercises its discretion to stay discovery in these cases until the completion of the criminal trials of the individual defendants.

## II. MOTION TO DISQUALIFY

Gayle M. Franzen, individually and as Chairman of the County Board of DuPage County, has moved to intervene in this action and has also moved to disqualify the State's Attorney of DuPage County and all of the Assistant State's Attorneys from representing DuPage County and/or the individual defendants in this action. Franzen purports to bring this motion because of "the obvious conflicts of interest and violations of Rule 1.7 of the Rules of Professional Conduct that obtain as a result of the attempted dual representation" by the State's Attorney of the individual defendants and DuPage County in this action. (Def. Motion to Intervene and Disqualify, at 2). Specifically, Franzen argues that the interests of the county and the individual defendants are at odds:

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 370194 (N.D.Ill.)
(Cite as: 1997 WL 370194 (N.D.Ill.))

Page 4

"[the individual defendants have] a primary interest in avoiding individual civil liability. This may be done in a number of ways, including claiming that they acted within the scope of their authority, and presenting evidence which will project that theory in its best light. Further, this must be done, if necessary, in spite of the fact that to do so would subject the county to tremendous civil liability.... The interests of Mr. Franzen and the [County] Board are at least twofold; to avoid corporate liability on the part of the county in the civil action, and to safeguard the public funds in a reasonable fashion in all other regards."
(Def. Motion to Intervene and Disqualify, at 4-5 (quoting memorandum decision issued by Judge Pirrello of Illinois Circuit Court for Seventeenth Judicial Circuit)). Franzen goes on to note that counsel for the individual defendants will "likely argue (or assert affirmative defenses on behalf of the individual defendants) that those defendants were acting in their official capacities or within the scope of their employment thus improperly imposing liability on the County." (Def. Motion to Intervene and Disqualify, at 6). In essence, Franzen argues that such an argument on the part of defendants' counsel is in conflict with the county's interest in asserting that the acts of the individual defendants were not within the scope of their employment.

Disqualification motions entail a two-step process. The court must first determine whether there has been any ethical violation. If an ethical violation has occurred, then the court must decide whether disqualification of counsel would be the appropriate remedy. *Guillen v. City of Chicago,* 956 F.Supp. 1416, 1421 (N.D.Ill.1997) (Grady, J.). The burden is on the moving party to adduce facts that demonstrate that disqualification is necessary. *Id.* As the court in *Guillen* noted, counsel should not be disqualified unless there is a "substantial basis for believing that *actual,* rather than merely potential, conflicts of interest are afoot." *Id.* at 1422 (citations omitted). In these cases, Franzen has only pointed to *potential* conflicts of interest related to the dual representation of the county and the individual defendants. Surely, it would be advantageous to the county's purse if the individual defendants were deemed by the court of the finder of fact to have been acting outside the scope of their employment. Yet, Franzen has made no claim, nor has he produced any evidence that might show, that the individual defendants' were in fact acting outside the scope of their employment. Denial of Franzen's motion would therefore be appropriate on this basis alone.

*5 Moreover, the Seventh Circuit has had the occasion to address the very question before the court, i.e., whether disqualification is required whenever an attorney represents both a government entity and individual law enforcement officers and government officials in a § 1983 case. *See Coleman v. Smith,* 814 F.2d 1142 (7th Cir.1987). In *Coleman,* the court distinguished the Second Circuit's decision in *Dunton v. County of Suffolk,* 729 F.2d 903 (2d Cir.1984). In *Dunton,* the Second Circuit found disqualification appropriate where counsel for the county and the individual defendant had argued during trial that the individual defendant, a police officer, had acted as an "irate husband" when throwing plaintiff out of a car and striking him. The *Dunton* court found that counsel's argument undermined the police officer's good faith immunity defense. *See Coleman,* 814 F.2d at 1147 (relating facts and holding of *Dunton* ). The *Coleman* court stated that it was "troubled by the Second Circuit's broad holding that after *Monell* an automatic conflict results when a governmental entity and one of its employees are sued jointly under section 1983." *Id.* at 1147-48. Assessing the facts of the case before it, the court found that no actual conflict of interest was present, and that disqualification was not required. Specifically, the court looked to the conduct of the defendants' attorney during discovery and after entry of default judgment and to whether there was any "fingerpointing" or divided allegiances among the defendants. The court also noted that the municipal defendant had conceded that the individual defendants' actions were within the scope of their employment. The court found noth-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 370194 (N.D.Ill.)
(Cite as: 1997 WL 370194 (N.D.Ill.))

Page 5

ing that would indicate a conflict of interest. *Id.* at 1148.

The facts of the cases before the court are similar. To be sure, the *Coleman* court had the benefit of knowing what happened at trial, while in the instant case the litigation is just beginning. Yet, Franzen can point to no *actual* conflict of interest, nor has he shown that the conduct of defendants' counsel has been inappropriate in any way. To date, the defendants have presented a united defense and no "fingerpointing" has occurred. While Franzen has not conceded that the individual defendants were acting within the scope of their authority, he has also not taken the opposite position.

The concept of "actual" versus "potential" conflict of interest is deceptive. Here, the State's Attorney argues that there is no colorable defense available to the county which is in conflict with any defense available to the individual defendants (and vice versa). The State's Attorney argues that the only defense that would relieve the county from liability would be a scope of employment defense. The argument concludes that because Franzen cannot point to any facts that would support the assertion of such a defense, any conflict is merely potential, i.e., it does not arise until such facts become known. But the State's Attorney is uniquely positioned to "know" the facts in his capacity as attorney for the individuals. It is odd to conclude that, in assessing facts that are relevant to the scope of employment defense, the State's Attorney does not have divided loyalties. Indeed, the decision whether to explore such facts places the State's Attorney in a conflict position-does the State's Attorney seek out information that might aid one client at the expense of another client? But the State's Attorney says that it does not matter because the county must indemnify the individuals if they are found liable. Assuming *arguendo* that there is a duty to indemnify, this court refuses to conclude that the county would not be injured by a determination of municipal liability, even if it had to pay no additional money.

\*6 Nevertheless, the Seventh Circuit has upheld the distinction between actual and potential conflicts, and this court is bound to follow it. In these cases, Franzen has not adequately demonstrated that the position that the individual defendants were acting outside the scope of their employment is "colorable and non-frivolous." Under the law of this circuit, actions by government officials such as those alleged in the cases at bar would appear to be within the scope of employment. *See, e.g., Coleman,* 814 F.2d at 1148-50 (finding that police officers acted within scope of employment when falsely arresting plaintiff, even though real purpose of arrest was to hamper investigation into police corruption).

Defendants have noted that the court's decision in *Wilson v. City of Chicago,* 900 F.Supp. 1015 (N.D.Ill.1995) (Gettleman, J.), is currently on appeal and that the Seventh Circuit's decision in that case may change the law on the scope of employment defense. In *Wilson,* the defendant police officers-in the course of an official police investigation, while on duty, in uniform, and at their place of employment-physically abused the plaintiff while in police custody. The court found that these actions were within the scope of employment, relying in part on the fact that "[t]he purpose of the beating significantly served their employer's objective-to elicit a confession to the shooting of two Chicago police officers." *Wilson,* 900 F.Supp. at 1031-32.

On appeal, the Seventh Circuit may choose to reverse *Wilson* or to otherwise clarify the scope of employment defense. If this occurs, then Franzen and the County Board may have a colorable and non-frivolous argument that the individual defendants were acting outside the scope of their employment in these cases. However, absent such an occurrence, Franzen has not met his burden of showing that an actual conflict of interest exists, as required by *Coleman.*

For the reasons stated above, defendants' motion to stay discovery is GRANTED. Gayle M. Franzen's motion for injunctive relief is DENIED.

N.D.Ill.,1997.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 370194 (N.D.Ill.)
**(Cite as: 1997 WL 370194 (N.D.Ill.))**

Page 6

Cruz v. County of DuPage
Not Reported in F.Supp., 1997 WL 370194 (N.D.Ill.)

END OF DOCUMENT

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.