IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 09–cv–01063–REB–KMT

TONYA CREEL,

      Plaintiff,

v.

SAM JAHANI, D.O., and
URGENT CARE, INC., a Colorado corporation,

      Defendants.

---

## ORDER

---

This matter is before the court on "Defendants' Motion to Stay or in the Alternative for Entry of a Protective Order under F.R.C.P. 26(c)" (hereinafter "Mot.") [Doc. No. 29, filed October 28, 2009]. Defendants supplemented the Motion on November 17, 2009 ("Supp. Mot.") [Doc. No. 35]. Plaintiff filed "Plaintiff's Brief in Opposition to Defendant's Motion to Stay or in the Alternative for Entry of a Protective Order under F.R.C.P. 26(c)" (hereinafter "Resp.") [Doc. No. 33, filed November 6, 2009], and Defendants filed a Reply on November 12, 2009. [Doc. No. 34]. The Motion is now ripe for review and ruling.

It appears that Defendant Jahani is currently under investigation by the Drug Enforcement Administration ("DEA") and the Internal Revenue Service ("IRS"), although the full scope of the investigation is unknown. Defendants request a stay of the proceedings in this civil case or, in the alternative, to postpone discovery on the bases that 1) "a large and significant

portion of Defendants' documents are currently not in their possession as a result of a criminal

investigation" and 2) "if relief is not granted, Defendant Jahani will be forced to choose between

invoking his Fifth Amendment privileges and being able to adequately defend against the serious

allegations raised in this civil litigation."[1]

### *Background*

On May 6, 2009, Plaintiff filed this Complaint alleging she was wrongfully terminated

from her employment for "blowing the whistle" on what she alleges was Defendant Jahani's

wrongful Medicare billings to the government.  Plaintiff claims that, as office manager for

Defendants, she was fired because she chronically complained about the accuracy of the

Defendants' billings and ultimately reported the inaccuracies to the Department of Health and

Human Services ("DHHS").  (Compl. at ¶¶ 12-75.)  The alleged Medicare billing fraud which

Plaintiff investigated, talked to Defendant Jahani about, and ultimately reported, included the

Defendants' alleged practice of "up-coding" to overuse the 99214 "established patient" CPT

billing code at a level which she claimed was mathematically impossible and not warranted by

the provided level of care.  (Resp. at ¶ 5.)  Plaintiff claims Defendant Jahani also required

unnecessary follow-up office visits, billed ordinary care as "urgent," and billed for daily visits to

hospital and nursing home patients, when in fact Dr. Jahani had not seen the patient.  (Compl. ¶

15.)  Plaintiff's Complaint contains five claims for relief: whistleblower liability, wrongful

---

[1]Originally, defendant also requested the stay in order for Defendants to obtain
criminal counsel to adequately advise them on their constitutional rights as they relate to
any potential criminal charges.  (Mot. at ¶ 3.)  In the Supplement to the Motion, however, the
Defendants advise the court they have now obtained criminal representation.

discharge, breach of contract, tortious interference with prospective business relations, and defamation.

Plaintiff brings her retaliation against a whistleblower pursuant to the False Claims Act's ("FCA") *qui tam* provisions. These provisions are designed to provide an incentive for private individuals to expose those who defraud the government. *United States ex rel. Ramseyer v. Century HealthCare Corp.,* 90 F.3d 1514, 1517 (10th Cir.1996). The FCA imposes liability upon any persons who present false claims to the U.S. Government for "payment or approval." 31 U.S.C. § 3729. The FCA empowers individuals to bring a civil suit on behalf of the United States and to share in a percentage of any recovery that results. *See* 31 U.S.C. § 3730(d). Any employee who takes action "in furtherance" of such a lawsuit is protected against retaliation by his or her employer. § 3730(h). Since only actions "in furtherance" of FCA actions are protected, plaintiffs cannot succeed in a retaliation claim unless their actions "could be reasonably described as an 'investigation' sufficient to put defendants on notice of a possible *qui tam* action." *Ramseyer*, 90 F.3d at 1522; *Overton v. Board of Com'rs of Rio Blanco County,* 2006 WL 2844264, at *4 (D. Colo. 2006).

Title 31 U.S.C. § 3730(h) prohibits employer retaliation against "[a]ny employee . . . because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section." 31 U.S.C. § 3730(h); *United States ex rel. Holeman v. City of Commerce City, Colo.,* 112 F. Supp. 2d 1079, 1083-1084 (D. Colo. 2000). The retaliation can take the form of "discharge[ ], demot[ion], suspen[sion], threat[s],

3

harass [ment], or [ ] any other [form of] discriminat[ion][ ] in the terms and conditions of employment by his or her employer." *Id.*  In this case, Plaintiff alleges, "[i]n particular, the Defendants discharged Creel, harassed her and interfered with her attempts to find new employment and otherwise discriminated against her in the terms and conditions of her employment because she investigated and took actions in furtherance of a potential *qui tam* action." (Compl.  at ¶ 86.)  Under Section 3730(h), Plaintiff "need not actually file a *qui tam* action in order to maintain a claim." *Ramseyer*, 90 F.3d at 1522.  Plaintiff need only show that the activity prompting Dr. Jahani's and Urgent Care, Inc.'s alleged retaliation was undertaken "in furtherance of a private *qui tam* action or assisting in an FCA action brought by the government." *Id.*; *Holeman*, 112 F. Supp. 2d at 1084.

Against this backdrop, on October 13, 2009, local law enforcement and federal agents executed search warrants Defendant Urgent Care's facilities in both Grand Junction and Montrose, as well as Defendant Sam Jahani's medical office in Delta. (Mot. at 2.)  At or around this time, Defendants were informed they were the subject of a criminal investigation. As part of the raid, federal agents removed a large quantity of patient records and various other business documents. (Resp. at ¶ 2.)  From newsprint accounts it appears Dr. Jahani is being investigated for his prescription drug distribution with respect to controlled substances. (Resp. at ¶ 2.)  It further appears that DHHS is not part of the investigation which resulted in the execution of the search warrants referenced herein.

**Analysis**

The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants.  How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.  *Kansas City Southern Ry. Co. v. United States*, 282 U.S. 760, 763 (1931).

In assessing the propriety of a stay, this court must consider: whether the movant is likely to prevail in the related proceeding; whether, absent a stay, any party will suffer substantial or irreparable harm; and the public interests at stake.  *Landis v. North American Co.*, 299 U.S. 248, 254 (1936); *United Steelworkers of America v. Oregon Steel Mills, Inc.,* 322 F.3d 1222, 1227 (10th Cir. 2003); *Battle v. Anderson*, 564 F.2d 388, 397 (10th Cir. 1977).

When considering a stay in a matter involving parallel criminal and civil proceedings, the primary debate centers on the criminal defendant's potential waiver or invocation of his Fifth Amendment rights.  "The Constitution [ ] does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings."  *Securities Exchange Commission v. Dresser Industries Inc.*, 628 F.2d 1368, 1375 (D.C. Cir. 1980) (citing *Baxter v. Palmigiano*, 425 U.S. 308, 317-19 (1976)).  The *Dresser* court stated, "a court may decide in its discretion to stay civil proceedings, postpone civil discovery, or impose protective orders and conditions when the interests of justice seem to require such action."  *Id.* at 1375 (internal quotation omitted).  *See also United States v. Kordel*, 397 U.S. 1, 11-12 (1970) (parallel civil and criminal actions might, in "special circumstances," raise constitutional problems and a defendant might be able to argue

5

that his due process and self-incrimination rights require the stay of proceedings in the civil

action).

In *Cruz v. County of Dupage*, 1997 WL 370194, at *1 (N.D. Ill. June 27, 1997), the court

aptly observed the "ultimate question . . . is whether the court should exercise its discretion in

order to avoid placing the defendants in the position of having to choose between risking a loss

in their civil cases by invoking their Fifth Amendment rights, or risking conviction in their

criminal cases by waiving their Fifth Amendment rights and testifying in the civil proceedings."

The court notes that neither Dr. Jahani nor Urgent Care has been indicted or otherwise

criminally charged with wrongdoing.  Also, it appears from the limited information available,

that the criminal investigation underpinning the execution of search warrants was not related to

Plaintiff's *qui tam* complaint that the Defendants were fraudulently billing Medicare or other

insurance programs.  In terms of the quandary the Defendants encounter, the court notes at the

outset that it is not unconstitutional to force a defendant to make this Hobbesian choice.  *In re*

*CFS-Related Securities Fraud Litigation*, 256 F. Supp. 2d 1227, 1236 (N.D. Okla., 2003).

Balanced against the possible, although not yet realized, constitutional dilemma faced by Dr.

Jahani is that "[t]he right to proceed in court should not be denied except under the most extreme

circumstances."  *Commodity Futures Trading Com'n v. Chilcott Portfolio Management, Inc.,* 713

F.2d 1477, 1484 (10th Cir. 1983) (*quoting Klein v. Adams & Peck,* 436 F.2d 337, 339 (2d Cir.

1971).  In other words, stays of the normal proceedings of a court should be the exception rather

than the rule.  *See, e.g., Trustees of the Plumbers and Pipefitters Nat'l Pension Fund v.*

*Transworld Mechanical, Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995); *In re Par Pharmaceutical Inc*., 133 F.R.D. 12, 13 (S.D.N.Y. 1990).)

In determining whether to stay civil proceedings, courts balance the burden of proceeding with both cases simultaneously against the harm to the civil opponent, in this case the plaintiff, if a stay were granted. *See* Judge Milton Pollack, Presentation at the Transferee Judges' Conference, PARALLEL CIVIL AND CRIMINAL PROCEEDINGS, 129 F.R.D. 201, 203 (1989). A motion for a stay entails a case-by-case, fact-specific inquiry, with courts frequently citing some combination of six factors in determining whether to enter a civil stay: the extent to which the issues in the criminal case overlap with those presented in the civil case; the status of the case, including whether the defendants have been indicted; the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to defendants caused by the delay; the private interests of and burden on the plaintiff; the interests of the courts; and the public interest. *String Cheese Incident, LLC v. Stylus Shows, Inc.*, 2006 WL 894955, at *2 (D. Colo. 2006). *See Transworld*, 886 F. Supp. at 1139. In considering the *String Cheese Incident* factors, the court weighs Plaintiff's interests in proceeding with the suit against the burden on Defendants of going forward. *Id.* The Court then considers the remaining factors.

Defendants have candidly advised the court that Defendants' criminal counsel have stated ". . . with respect to the Fifth Amendment concerns [  ], depositions could be taken, provided criminal counsel was permitted to attend the depositions." (Supp. Mot. at ¶ 5.) In the civil case,  whether Dr. Jahani is ultimately proven to have committed Medicare billing fraud is

not the issue; the issue is whether he fired the plaintiff based on the fact that she reported him to

DHHS.  The facts and issues intrinsic in the civil verses criminal cases are separate and apart.

Further, no indictment has been returned in the criminal case.  *See Creative Consumer*

*Concepts, Inc. v. Kreisler*, 563 F.3d 1070, 1080-81 (10th Cir. 2009) (when the civil case is

tightly focused, any crossover of evidence likely to occur between the civil and criminal

investigation was minimal).  That the criminal investigation is so postured is critical because it

dictates both the degree of risk of self-incrimination and the length of potential delay to the civil

case.

> The strongest case for a stay of discovery in the civil case occurs during a
> criminal prosecution after an indictment is returned. The potential for self-
> incrimination is greatest during this stage, and the potential harm to civil litigants
> arising from delaying them is reduced due to the promise of a fairly quick
> resolution of the criminal case under the Speedy Trial Act.

*Dresser*, 628 F.2d at 1375-76.  Numerous courts, including the Southern District of New York in

the *WorldCom* civil litigation, have granted civil stays in the **post**-indictment context.  *In Re*

*WorldCom, Inc.*, 2002 WL 31729501, at *9; *Volmar Distributors Inc. v. New York Post Co. Inc.*,

152 F.R.D. 36 (S.D.N.Y. 1993); *Midas International Corp. v. GV&G Trans. Services,* 1987 WL

18916 (N.D. Ill. Oct. 19, 1987); *Fidelity Funding of California v. Reinhold,* 190 F.R.D. 45, 48

(E.D.N.Y. 1997) (staying the civil case against the defendant who was under indictment while

denying a stay as to his unindicted civil co-defendant); *Gala Enterprise Inc. v. Hewlett Packard*

*Co.*, 1996 WL 732636, at *2 (S.D.N.Y. Dec. 20, 1996) ("Pre-indictment requests of a stay of

civil proceedings are generally denied").

Based on the representations of criminal counsel, it appears there is little likelihood of unfair prejudice to Dr. Jahani or to Urgent Care by allowing discovery to proceed in the civil case.  The plaintiff's case, on the other hand, is for money damages based on retaliation in an employment context, and she has a legitimate fear the Defendants "may be put out of the medical practice by either their DEA or IRS violation, so it is important for Creel to be at the head of the creditor line."  The prejudice to plaintiff by delaying the prosecution of her case could be substantial.

Therefore, it is **ORDERED**

"Defendants' Motion to Stay or in the Alternative for Entry of a Protective Order under F.R.C.P. 26(c)"  [Doc. No. 29] is **DENIED**.

Dated this 25th day of November, 2009.

**BY THE COURT:**

_____
Kathleen M. Tafoya
United States Magistrate Judge