**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.  09-CV-01063 REB-KMT

**TONYA CREEL,**
Plaintiff,

v.

**SAM JAHANI, D.O.**, and **URGENT CARE, INC., a Colorado Corporation**
Defendants.
_____

**DEFENDANTS' MOTION FOR PROTECTIVE ORDER**
_____

Defendants, pursuant to Fed.R.Civ.P. 26(c)(1), move the Court for an order forbidding Plaintiff from taking the deposition of Susan Thurston.  Further, Defendants seek an order that portions of the writings and tangible things designated for production by Plaintiff in Ms. Thurston's Deposition Notice not be produced, inspected, or copied.   As grounds for this Motion, Defendants state:

1.       Pursuant to D.C.Colo.LCivR 7.1A, the parties have discussed the relief sought by this Motion and Plaintiff does not consent to the relief requested herein.

2.       Pursuant to Fed.R.Civ.P. 26(c), the Court has authority to enter a protective order forbidding disclosure or discovery.   In this case, such an order is proper because Plaintiff seeks communications protected by the attorney-client privilege, and additional documents protected by the work-product privilege.

3.       On March 1, 2010, Plaintiff e-mailed Defendants an "Amended Notice of Deposition Duces Tecum to Susan Thurston," and a "Subpoena Duces Tecum in a Civil Case."

1

*See Exhibit 1.*  By these documents, Plaintiff requested and commanded Ms. Thurston to produce and permit inspection and copying of the following:  1) Ms. Thurston's entire file regarding Defendants, including "communications, medical records reviewed, and reports prepared;" 2) correspondence between Ms. Thurston and Plaintiff; and 3) correspondence between Plaintiff and the law firm of Broad and Cassel (Defendant's counsel in a separate matter, hereinafter referred to as "B&C").[1]  Plaintiff's request contains no specificity as to relevant dates or documents and simply asks for all documents in Ms. Thurston's possession.

4.      Ms. Thurston is a Healthcare Consultant retained by B&C and Dr. Jahani.  B&C and Dr. Jahani retained Ms. Thurston to provide consulting services to assist B&C in its legal representation of Dr. Jahani, and specifically, because of the prospect of litigation pertaining to Dr. Jahani's compliance with an Integrity Agreement, entered into with the United States Government in December 2005, as well as more specific potential litigation concerns.[2]

5.      Prior to being retained, Ms. Thurston agreed that any conversations she had with Dr. Jahani, and/or his counsel would be protected by the attorney-client privilege and that any work she performed under this engagement was protected under the work-product privilege.  In fact, prior to any engagement, Ms. Thurston was made aware that the disclosure of any

---

[1] Plaintiff refers to Defendants' counsel, Anne Branan, as her own counsel in her Deposition Notice and Subpoena.  Plaintiff has never explained to Defendants the basis for such belief.  So, Defendants do not know if this is a typographical error, meant as harassment, or is a good-faith assertion that her attorney is/was Anne Branan.

[2] Defendants have engagement letters outlining the reasons for retaining Ms. Thurston, however those letters have not been produced as they are covered by the attorney-client privilege.  Should the Court desire to review these documents of engagement, Defendants request that such a review be done *in camera.*

2

communications between her and Dr. Jahani and/or B&C could be construed as a waiver of Dr. Jahani's privilege and cause Dr. Jahani irreparable injury.  B&C required that all correspondence regarding Dr. Jahani be marked "Privileged and Confidential Client/Attorney Work Product." Finally, prior to her engagement, Ms. Thurston agreed that all reports and work papers created during her engagement were the property of B&C, and constitute privileged and confidential information.

6.      Supreme Court Standard 503 provides a comprehensive guide to the federal common law of attorney-client privilege.  It states in pertinent part:

> A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client, (1) between himself or his representative and his lawyer or his lawyer's representative, or (2) between his lawyer and his lawyer's representative, or (3) by him or his lawyer to a lawyer representing another in a matter of common interest, or (4) between representatives of the client or between the client and a representative of the client, or (5) between lawyers representing the client.

*See In re Bieter Co.*, 16 F.3d 929, 935 (8th Cir. 1994).  So, "communications can, as Supreme Court Standard 503(b)(1) indicates, be privileged if they are between a representative of the client and the client's lawyer." *Id.*   This includes independent consultants hired by the client and the client's lawyers.  *Id.; McCaugherty v. Siffermann*, 132 F.R.D. 234, 239 (N.D. Cal. 1990) (holding that the attorney-client privilege would apply to communications between two independent consultants hired by the client and the client's lawyers just as it would apply to communications between the client's employees and its lawyers).

7.      In this case, all communications between Dr. Jahani and Ms. Thurston and between B&C and Ms. Thurston are protected by the attorney-client privilege because Ms.

Thurston was a representative of Dr. Jahani and B&C.   Dr. Jahani and B&C hired Ms. Thurston as a consultant and instructed her to communicate with Dr. Jahani and B&C for the purpose of assisting B&C with the provision of legal advice pertaining to Dr. Jahani's compliance with his Integrity Agreement, and in response to specific concerns over potential litigation.

8.      Notably, only Dr. Jahani may waive his attorney-client privilege.  B&C and Dr. Jahani took specific measures to ensure that communications between Ms. Thurston and Dr. Jahani and B&C remained confidential.   So, even if Ms. Thurston did previously communicate with a third-party regarding Dr. Jahani, should any communications exist, such unauthorized communications cannot constitute a waiver of Dr. Jahani's privilege.

9.      Plaintiff has made clear her intention to ask Ms. Thurston about communications she had with B&C and Dr. Jahani at her deposition.  Such inquiry is impermissible and must be forbidden by this Court to preserve Dr. Jahani's attorney-client privilege.  The danger of Ms. Thurston revealing protected communications increases dramatically should a deposition take place, since Defendants are not permitted to instruct Ms. Thurston to not answer specific questions at the deposition, as she is represented by another attorney.  Under this same analysis, this Court must forbid Plaintiff from obtaining these same communications through a subpoena duces tecum.

10.     For these reasons, it is improper for Plaintiff to depose Ms. Thurston and to obtain documents pertaining to communications between Ms. Thurston and anyone else that pertain to Dr. Jahani.

11.     Similarly, this Court should forbid Ms. Thurston's deposition and Plaintiff's

4

document requests contained in her subpoena because that information is protected by the work-product privilege.

12.      The work-product doctrine, codified in Federal Rule of Civil Procedure 26(b)(3) protects from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation.   *F.R.C.P. 26(b)(3)*.    The question of whether documents were prepared in anticipation of litigation depends on whether a given document was prepared or obtained because of the prospect of litigation.  *See Maine v. Dept. of the Interior* 298 F.3d 60, 68 (1st Cir. 2002).  To be afforded protection by the work-product doctrine, litigation does not need to be the primary reason for production, rather it simply needs to be one of the purposes.  *In re Grand Jury Subpoena*, 357 F.3d at 908 (9th Cir. 2004) ("[t]he question of entitlement to work product protection cannot be decided simply by looking at one motive that contributed to a document's preparation" but rather requires consideration of the "circumstances surrounding the document's preparation") (also citing 8 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE 2d § 2024 (West 2006)) ("Under the Wright and Miller 'because of' standard, a document created in part because of the prospect of litigation but also due to business reasons would be protected by the work product doctrine.").  *U.S. v. Adlman*, 134 F.3d at 1198 (2d. Cir. 1998) ("We believe that a requirement that documents be produced primarily or exclusively to assist in litigation in order to be protected is at odds with the text …of the Rule").

13.      Dr. Jahani and B&C hired Ms. Thurston, in large part, due to the potential of litigation.  All documents and tangible things created by Ms. Thurston belong to B&C and were prepared at the direction of B&C.  Thus, these documents may not be the subject of discovery

requests or inquiry at deposition because they reveal the mental impressions, conclusions, opinions, and generally the work-product of Dr. Jahani and his counsel.

14.     Accordingly, this Court must forbid the deposition of Ms. Thurston because if deposed, Ms. Thurston will be forced to reveal the impressions, conclusions, and opinions of Dr. Jahani and his counsel, which were developed in anticipation of potential litigation.  And this Court must forbid the production of documents by Ms. Thurston in response to Plaintiff's subpoena for similar reasons.

15.     Finally, Plaintiff's request for <u>all</u> medical records reviewed by Ms. Thurston is far too broad to be covered under the very limited provisions of the Protective Order between the parties in this case and the stringent requirements of HIPAA.  First, medical records that are relevant to this case may only be obtained through Dr. Jahani, as Ms. Thurston is not a party to the Protective Order.  Further, while medical records, or portions thereof, that are deemed relevant and are in the possession of Dr. Jahani may be produced in this case, such limited provision does not entitle Plaintiff to embark on a fishing expedition, by going through each and every medical record maintained by Dr. Jahani.  Such unlimited access is an unnecessary intrusion upon the private medical lives of Dr. Jahani's patients.  But Defendants have indicated to Plaintiff that they are willing to provide those medical records, or portions thereof, that are relevant, and have entered into a Protective Order to facilitate this effort.  To date, relevant

medical records have been identified through Plaintiff's Request for Production #6.[3]

16.    Because it is clear that Plaintiff intends to use the deposition of Ms. Thurston to inquire about, and to obtain, communications protected by the attorney-client privilege, documents and tangible items protected by the work-product privilege, and medical records that may not be subject to the Protective Order in this case, Defendants respectfully request this Court to forbid Plaintiff from deposing Ms. Thurston and from obtaining the documents requested in Plaintiff's Notice and Subpoena.

WHEREFORE, Defendants respectfully move for entry of a Protective Order.

Respectfully submitted this 15th day of March, 2010.

s/Jim Colling_____
Jim C. Colling, #38300
Michael C. Santo, #24083
BECHTEL & SANTO, LLP
205 N. 4th St., Suite 300
Grand Junction, CO  81501
Attorneys for Defendants
(970) 683-5888

---

[3] Currently, Defendants are not in possession of relevant medical records, as these records have been confiscated by federal authorities in another matter.  Plaintiff is aware of this cause for delay, and the Court was made aware of this potential delay in Defendants' Motion to Stay. Defendants originally objected to Plaintiff's request for production, in part, due to HIPAA, but have agreed to reword their objection to state that Defendants cannot determine whether production of a particular medical record is appropriate without first reviewing the medical records.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 15, 2010, I electronically filed **DEFENDANTS'
MOTION FOR PROTECTIVE ORDER** with the Clerk of Court using the CM/ECF system
which will send notification of such filing to the following e-mail addresses:

Michael S. Porter, Esq.
4465 Kipling Street
Wheat Ridge, CO 80033
E-mail: porterlaw@comcast.net

Richard C. LaFond, Esq.
Richard C. LaFond, P.C.
1756 Gilpin Street
Denver, CO 80202
E-mail: richardlafondpc@gmail.com

And I hereby certify that I have served the foregoing document to the following non
CM/ECF participants in the manner (mail, hand-delivery, etc.) indicated by the non-participant's
name:

Lance G. Eberhart, Esq.                      Via E-mail
Hall & Evans, LLC
1125 Seventeenth Street, Suite 600
Denver, CO 80202
E-mail: Eberhart@hallevans.com


s/Jamie D. Wehling_____
Jamie D. Wehling