IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-CV-01063 REB-KMT

**TONYA CREEL,**

Plaintiff,

v.

**SAM JAHANI, D.O.**, and **URGENT CARE, INC., a Colorado Corporation**

Defendants.

**PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANTS' MOTION FOR PROTECTIVE ORDER**

The Plaintiff, Tonya Creel ("Creel"), by and through her counsel of record, submits the following response to the Defendants' motion for protective order.

1. There should be little question that the Defendants' request for a blanket protective order that "forbid[s] Plaintiff from taking the deposition of Susan Thurston" and orders that certain documents not be produced is unsubstantiated and inappropriate, bordering on discovery abuse.

2. While the common law does recognize limited circumstances under which communications between an independent consultant and an entity's attorney may be cloaked with the attorney-client privilege, in order for the claim of privilege to prevail the proponent must satisfy exacting tests. And, even if successful the privilege only extends to communications whose primary purpose is to obtain legal advice, not when communicated to

further a business purpose.   Under no circumstances would a blanket prohibition of Ms. Thurston's deposition be appropriate, particularly when she has relevant knowledge and information regarding her interaction with many individuals outside the scope of the attorney client privilege.

3. While the Defendants bear the burden of establishing the basis for their assertion of privilege with respect to Ms. Thurston and her documents, their motion is woefully deficient, containing neither declarations, documents nor privilege logs.  And, because the Defendants prevented the Plaintiff from asking Ms. Thurston any questions, the Plaintiff has been unable to learn from Ms. Thurston the practical nature and scope of her relationship with the Defendants; these are key issues to the Defendants' claim of privilege.  What we are left with are the Defendants' bald assertions in paragraphs 4 and 5 and footnote 2 of their motion which claim that Ms. Thurston was hired to consult with respect to the prospect of litigation and she agreed that any conversation she had with Dr. Jahani or his counsel would be protected under the attorney-client privilege.

4. As is discussed below, the known evidence is at odds with these assertions as Ms. Thurston's very limited activities concerned fulfilling well-defined roles under an Integrity Agreement between Dr. Jahani and the United States Government which followed the successful settlement of a prior Medicare fraud suit against Dr. Jahani.  To the best of the undersigned counsel's knowledge, during the relevant time periods, i.e. the date of contract with Ms. Thurston until Ms. Creel's termination, there had been no threat of litigation between Dr. Jahani and the United States Government with respect to this Integrity Agreement.

5.       The fact is that the Defendants contracted with Ms. Thurston to assist them in fulfilling a critical business purpose.  Dr. Jahani had been the subject of a prior Medicare fraud case, had reached a settlement with the government and one condition of that settlement was to comply with an Integrity Agreement ("IA").  Excerpts from Dr. Jahani's IA are attached as Exhibit A.  One term of the IA required Dr. Jahani to provide training and certification to his employees. *Id.* at 5-7.  Ms. Thurston was contracted with by Dr. Jahani, not his attorneys, to provide the education and training required by the IA. Exhibit B, Deposition of Samuel Jahani, 22:17-23:8[1].

6.       In addition, Ms. Thurston was appointed the Compliance Contact, per § III.A. of the IA. Exhibit B, 103:1-7; 104:4-19; 105:8.  These are Ms. Thurston's only known contractual obligations with the Defendants.  Ms. Thurston's actions were not controlled by either Dr. Jahani or his attorney. *Id.,* 176:6-13.  In fact, it was necessary for Ms. Thurston to maintain her independence from Dr. Jahani and his attorneys, and she did. *Id.*; 263:2-11; 265:6-18.  Dr. Jahani paid Ms. Thurston. *Id.,* 245:11-15.

7.       This is not the situation, as in *McCaugherty v. Sifferman*, 132 F.R.D. 234, 239-240 (N. D. Cal. 1990) where the outside consultants were the functional equivalents of employees and whose function involved providing advice to the Defendants' attorneys for the purpose of facilitating the sale of the bank at issue – the very transaction that was the subject matter of the lawsuit.  Here, Ms. Thurston was a limited scope contractor whose contractual

---

[1] Later in his deposition, Dr. Jahani tried to claim that the contract was between his attorneys and Ms. Thurston.  Exhibit B, 117:25-118:19.  This attempt to alter his prior testimony is suspect and certainly does not change his prior testimony.  It is also incredible as Dr. Jahani lumped Ms. Thurston and Ms. Linker together, claiming both their contracts were with his attorneys. *Id.* Discovery from Ms. Linker has established that her contract was directly with Dr. Jahani.

obligation was limited to fulfilling the terms of the IA, and had nothing to do with the hiring and firing of employees like Ms. Creel.

8. The Colorado Supreme Court addressed this issue in *Alliance Construction Solutions, Inc. v. Department of Corrections,* 54 P.3d 861, 867-70 (Colo. 2002), *reh. denied*., and developed a detailed test to determine whether communications with an outside consultant are privileged. At the forefront of the Court's test is determining whether the contractor has such a significant relationship with the entity that it makes it appropriate to consider her a functional employee for the purposes of the privilege; whether the consultant should be considered as an insider. *Id.*   Not only must the consultant have a significant relationship with the entity, but the relationship must be to the transaction for which the entity needs legal services.

9. That is where the Defendants' motion for protective order fails.  Ms. Thurston was not a full time consultant but rather an individual who occasionally visited Dr. Jahani's office to provide education and training; she does not have a "significant relationship."  And, even if she did, at issue in this case are any communications about why Tonya Creel was fired – an issue well outside the scope of Ms. Thurston's contractual duties.

10. Furthermore, Ms. Thurston's activities fulfilled a business purpose, i.e., performing limited duties under the IA.  She was not an agent or adjunct of the attorneys and  her duties were not primarily for the purpose of generating legal advice – no privilege attaches to such business activities. *Alliance Construction* at 869; *McCaugherty* at 240.  And, if the communications at issue were not with respect to the business purpose of fulfilling Ms. Thurston's limited duties under the IA, then such communications fell outside the scope of her duties – again, no privilege would attach. *Alliance Construction* at 869-870.

4

11.     Because the transaction at issue in this case is the Defendants' decision to retaliate upon and wrongfully terminate Tonya Creel, in order for Ms. Thurston's communications with others about this subject matter to be privileged, it would be necessary to establish that she had been hired as an independent consultant for the purpose of making decisions about hiring and firing employees.  Because no such evidence has been tendered, and none is known to exist, the Defendants' motion for protective order must fail.

12.     In the unlikely event that this Court determines that some attorney-client privilege exists with respect to Ms. Thurston and Dr. Jahani and/or his attorneys, then the Court should also clarify that such privilege does not extend to Ms. Thurston's knowledge about events and communications outside the privilege, such as her communications with Tonya Creel, with Robin Linker or with others who may possess knowledge relevant to this dispute.

13.     Finally, in paragraph 15 of their motion, the Defendants ask this Court to prohibit the production of any of the Defendants' medical records in Ms. Thurston's possession.  However, because a Protective Order [Document # 28] is in place, no good reason exists to prohibit the production of these records.  HIPPA, for example, specifically authorizes the production of such medical records in a civil suit when a protective order is in place. See, 45 C.F.R. § 164.512 (e)(1)(B), attached as Exhibit C for the Court's convenience.

14.     Accordingly, the Plaintiff respectfully requests that the Defendants' motion for protective order be denied, that the Plaintiffs be granted their attorneys' fees and costs incurred in responding to this motion, and that the Court provide such further relief as it may deem appropriate.

5

Respectfully submitted April 1, 2010.

        THE LAW FIRM OF MICHAEL S. PORTER

       By: /s/ Michael S. Porter_____
         Michael S. Porter, Esq.
         4465 Kipling Street
         Wheat Ridge, CO  80033
         Telephone:  (303) 940-8370
         Fax:     (303) 421-4309
         E-mail: porterlaw@comcast.net

         Richard C. LaFond, Esq.
         Richard C. LaFond, P.C.
         1756 Gilpin St.
         Denver, CO  80202
         Telephone:  (303) 388-4551
         Fax:  (303) 388-8324
         E-mail:  richardlafondpc@gmail.com

         **ATTORNEYS FOR THE PLAINTIFF**
         **TONYA CREEL**

## **CERTIFICATE OF SERVICE**

   The undersigned hereby certifies that true and correct copy of the foregoing was filed and served on Thursday, April 01, 2010 by CMECF addressed to:

Richard C. LaFond, Esq.    (richardlafondpc@gmail.com)
Michael C. Santo, Esq.     (santo@bechtelsanto.com)
Jim C. Colling, Esq.      (colling@bechtelsanto.com)

   And I hereby certify that on April 01, 2010 I have served the foregoing document to the following non CM/ECF participant in the manner (e-mail) indicated by the non-participant's name:

Lance G. Eberhart, Esq.    (Eberhart@hallevans.com)
Hall & Evans, LLC
1125 Seventeenth Street, Suite 600
Denver, CO  80202

              s/ Yvonne Greenbaum_____