# EXHIBIT A TO

# BRIEF IN OPPOSITION TO
# MOTION FOR PROTECTIVE ORDER

Corporate Integrity Agreement

INTEGRITY AGREEMENT
BETWEEN THE
OFFICE OF INSPECTOR GENERAL
OF THE
DEPARTMENT OF HEALTH AND HUMAN SERVICES
AND
SAM JAHANI, M.D.

I. PREAMBLE

Sam Jahani, M.D. (Dr. Jahani) hereby enters into this Integrity Agreement (Agreement) with the Office of Inspector General (OIG) of the United States Department of Health and Human Services (HHS) to promote compliance with the statutes, regulations, program requirements, and written directives of Medicare, Medicaid, and all other Federal health care programs (as defined in 42 U.S.C. § 1320a-7b(f)) (Federal health care program requirements). This commitment to promote compliance applies to any entity that Dr. Jahani owns or in which Dr. Jahani has a control interest, as defined in 42 U.S.C. § 1320a-3(a)(3), and Dr. Jahani's and any such entity's Covered Persons as defined in Section II.C. Contemporaneously with this Agreement, Dr. Jahani is entering into a Settlement Agreement with the United States, and this Agreement is incorporated by reference into the Settlement Agreement.

II. TERM OF THE AGREEMENT

A. The date on which the final signatory of this Agreement executes this Agreement shall be known as the Effective Date. The period of compliance obligations assumed by Dr. Jahani under this Agreement shall be 5 years from the Effective Date of this Agreement. Each one-year period beginning with the one-year period following the Effective Date, shall be referred to as a "Reporting Period."

B. Sections VII, VIII, IX, X, and XI shall expire no later than 120 days from OIG's receipt of: (1) Dr. Jahani's final Annual Report; or (2) any additional materials submitted by Dr. Jahani pursuant to OIG's request, whichever is later.

C. The scope of this Agreement shall be governed by the following definitions:

Sam Jahani Integrity Agreement:

1

1. "Covered Persons" includes:

    a. all owners, officers, directors, associates, and employees of Dr. Jahani; and

    b. all contractors, agents, and other persons who provide patient care items or services or who perform billing or coding functions on behalf of Dr. Jahani.

2. "Relevant Covered Persons" includes persons involved in the delivery of patient care items or services and/or in the preparation or submission of claims for reimbursement from any Federal health care program.

### III. INTEGRITY OBLIGATIONS

Dr. Jahani shall establish and maintain a Compliance Program that includes the following elements:

#### A. Compliance Contact

Within 30 days after the Effective Date, Dr. Jahani shall designate a person to be responsible for compliance activities (Compliance Contact). Dr. Jahani shall maintain a Compliance Contact for the term of this IA. The Compliance Contact shall be responsible for: (1) developing and implementing policies, procedures, and practices designed to ensure compliance with the requirements set forth in this Agreement and with Federal health care program requirements; (2) monitoring Dr. Jahani's day-to-day compliance activities; and (3) meeting all reporting obligations created under this Agreement.

Dr. Jahani shall report to OIG, in writing, any changes in the identity or job responsibilities of the Compliance Contact, or any actions or changes that would affect the Compliance Contact's ability to perform the duties necessary to meet the obligations in this Agreement, within 15 days after such change. The name, address, phone number, and a description of any other job responsibilities performed by the Compliance Contact shall be included in the Implementation Report.

At least annually (and more frequently if appropriate), Dr. Jahani shall assess and update, as necessary, the Policies and Procedures. Within 30 days after the effective date of any revisions, the relevant portions of any such revised Policies and Procedures shall be distributed to all Covered Persons. Appropriate and knowledgeable staff shall be available to explain the Policies and Procedures.

Copies of the written Policies and Procedures shall be included in the Implementation Report. Copies of any written Policies and Procedures that are subsequently revised shall be included in the next Annual Report along with a summary of any change or amendment to each Policy and Procedure required by this Section and the reason for each change.

### D. Training and Certification

1. General Training. Within 90 days after the Effective Date, Dr. Jahani shall provide at least two hours of General Training to each Covered Person.

This training, at a minimum, shall cover the following topics:

    a. the requirements of Dr. Jahani's Agreement;

    b. an overview of Dr. Jahani's compliance program; and

    c. the written Policies and Procedures developed pursuant to Section III.C, above.

New Covered Persons shall receive the General Training described above within 30 days after becoming a Covered Person or within 90 days after the Effective Date, whichever is later. After receiving the initial General Training, described above, each Covered Person shall receive at least one hour of General Training in each subsequent Reporting Period.

2. Specific Training. Within 90 days after the Effective Date, each Relevant Covered Person shall receive at least three hours of Specific Training in addition to the General Training required above. The Specific Training shall be provided by an individual or entity other than Dr. Jahani or another Covered Person, and may be received from a variety of sources (e.g., CME classes, hospitals, associations, Medicare contractors).

This specific training shall include a discussion of:

    a. the accurate coding and submission of claims for services rendered and/or items provided to Federal health care program beneficiaries;

    b. policies, procedures, and other requirements applicable to the documentation of medical records;

    c. the personal obligation of each individual involved in the coding and claims submission process to ensure that such claims are accurate;

    d. applicable reimbursement statutes, regulations, and program requirements and directives;

    e. the legal sanctions for the submission of improper claims or violations of the Federal health care program requirements; and

    f. examples of proper and improper claim submission practices.

Relevant Covered Persons shall receive this training within 30 days after the beginning of their employment or becoming a Relevant Covered Person, or within 90 days after the Effective Date, whichever is later. A Dr. Jahani employee who has completed the Specific Training shall review a new Relevant Covered Person's work, to the extent that the work relates to the delivery of patient care items or services and/or the preparation or submission of claims for reimbursement from any Federal health care program, until such time as the new Relevant Covered Person completes his or her Specific Training.

After receiving the initial Specific Training, each Relevant Covered Person shall receive at least two hours of Specific Training in each subsequent Reporting Period. The Compliance Contact shall annually review the training, and where appropriate, update the training to reflect changes in Federal health care program requirements, any issues discovered during Claims Reviews and any other relevant information.

3. <u>Certification</u>. Each individual that is required to receive training shall certify in writing, or in electronic form if the training is computerized, that he or she has received the required training. The certification shall specify

the type of training received and the date received. The Compliance Contact shall retain the certifications along with all training materials. The training materials shall be provided in the Implementation Report, and to the extent the training is revised, shall also be included in the Annual Reports. The certifications shall be made available to OIG, upon request.

4. Qualifications of Trainer(s). Persons providing the training shall be knowledgeable about the subject area.

5. Update of Training. Dr. Jahani shall annually review the training, and, where appropriate, update the training to reflect changes in Federal health care program requirements, any issues discovered during the Claims Review, and any other relevant information.

6. Computer Based Training. Dr. Jahani may provide the training required under this Agreement through appropriate computer-based training approached. If Dr. Jahani chooses to provide computer-based training, he shall make available appropriately qualified and knowledgeable staff of trainers to answer questions or provide additional information to the individuals receiving such training.

E. **Review Procedures**

1. General Description.

    a. *Engagement of Independent Review Organization.* Within 90 days after the Effective Date, Dr. Jahani shall engage an entity (or entities), such as an accounting, auditing, or consulting firm (hereinafter "Independent Review Organization" or "IRO"), to perform reviews to assist Dr. Jahani in assessing and evaluating his billing and coding practices and certain other obligations pursuant to this Agreement and the Settlement Agreement.

    Each IRO engaged by Dr. Jahani shall have expertise in the billing, coding, reporting, and other requirements of a general practitioner and in the general requirements of the Federal health care program(s) from which Dr. Jahani seeks reimbursement. Each IRO shall assess, along with Dr. Jahani, whether it can perform the IRO review in a professionally independent and/or objective fashion, as appropriate to the nature of the engagement; taking into account any other business relationships or other engagements that may exist.

The IRO(s) review shall evaluate and analyze Dr. Jahani's coding, billing, and claims submission to the Federal health care programs and the reimbursement received ("Claims Review"). If Dr. Jahani or an entity in which Dr. Jahani has an ownership or control interest in (as defined in 42 U.S.C. §1320a-3(a)(3)) submits cost reports, Dr. Jahani shall engage an IRO to analyze whether Dr. Jahani sought payment for certain unallowable costs ("Unallowable Cost Review"). The applicable requirements relating to the IRO are outlined in Appendix A to this Agreement, which is incorporated by reference.

b. *Frequency of Claims Review*. The Claims Review shall be performed annually and shall cover each of the Reporting Periods. The IRO(s) shall perform all components of each annual Claims Review.

c. *Frequency of Unallowable Cost Review*. If applicable, the IRO shall perform the Unallowable Cost Review for the first Reporting Period. If not applicable, Dr. Jahani shall sign a certification, as required by Section III.E.4 below, stating that he does not currently and has not submitted a cost report since this Agreement was executed.

d. *Retention of Records*. The IRO and Dr. Jahani shall retain and make available to OIG, upon request, all work papers, supporting documentation, correspondence, and draft reports (those exchanged between the IRO and Dr. Jahani) related to the reviews.

2. <u>Claims Review</u>. The Claims Review shall include a Discovery Sample and, if necessary, a Full Sample. The applicable definitions, procedures, and reporting requirements are outlined in Appendix B to this Agreement, which is incorporated by reference.

a. *Discovery Sample*. The IRO shall randomly select and review a sample of 50 Medicare Paid Claims submitted by or on behalf of Dr. Jahani (Discovery Sample).

The Paid Claims shall be reviewed based on the supporting documentation available at Dr. Jahani's office or under Dr. Jahani's control and applicable billing and coding regulations and guidance to determine whether the claim submitted was correctly coded, submitted, and reimbursed.

Dr. Jahani provided to OIG within that period a reasonable timetable for curing the material breach and Dr. Jahani has followed the timetable.

For purposes of the exclusion herein, exclusion shall take effect only after an ALJ decision favorable to OIG, or, if the ALJ rules for Dr. Jahani, only after a DAB decision in favor of OIG. Dr. Jahani's election of its contractual right to appeal to the DAB shall not abrogate OIG's authority to exclude Dr. Jahani upon the issuance of an ALJ's decision in favor of OIG. If the ALJ sustains the determination of OIG and determines that exclusion is authorized, such exclusion shall take effect 20 days after the ALJ issues such a decision, notwithstanding that Dr. Jahani may request review of the ALJ decision by the DAB. If the DAB finds in favor of OIG after an ALJ decision adverse to OIG, the exclusion shall take effect 20 days after the DAB decision. Dr. Jahani shall waive his right to any notice of such an exclusion if a decision upholding the exclusion is rendered by the ALJ or DAB. If the DAB finds in favor of Dr. Jahani, Dr. Jahani shall be reinstated effective on the date of the original exclusion.

4. Finality of Decision. The review by an ALJ or DAB provided for above shall not be considered to be an appeal right arising under any statutes or regulations. Consequently, the parties to this Agreement agree that the DAB's decision (or the ALJ's decision if not appealed) shall be considered final for all purposes under this Agreement.

## XI. EFFECTIVE AND BINDING AGREEMENT

Consistent with the provisions in the Settlement Agreement pursuant to which this Agreement is entered, and into which this Agreement is incorporated, Dr. Jahani and OIG agree as follows:

A. This Agreement shall be binding on the successors, assigns, and transferees of Dr. Jahani;

B. This Agreement shall become final and binding on the date the final signature is obtained on the Agreement;

C. Any modifications to this Agreement shall be made with the prior written

consent of the parties to this Agreement;

D. OIG may agree to a suspension of Dr. Jahani's obligations under this Agreement in the event of Dr. Jahani's cessation of participation in Federal health care programs. If Dr. Jahani withdraws from participation in Federal health care programs and is relieved of his Agreement obligations by OIG, Dr. Jahani shall notify OIG 30 days in advance of Dr. Jahani's intent to reapply as a participating provider or supplier with any Federal health care program. Upon receipt of such notification, OIG shall evaluate whether the Agreement shall be reactivated or modified.

E. All requirements and remedies set forth in this Agreement are in addition to, and do not effect, (1) [Provider]'s responsibility to follow all applicable Federal health care program requirements or (2) the Government's right to impose appropriate remedies for failure to follow applicable program requirements.

F. The undersigned Dr. Jahani signatories represent and warrant that they are authorized to execute this Agreement. The undersigned OIG signatory represents that he is signing this Agreement in his official capacity and that he is authorized to execute this Agreement.

IN WITNESS WHEREOF, the parties hereto affix their signatures:

**Sam Jahani, M.D.**

_/s/ Sam Jahani, M.D._     12/3/05
Sam Jahani, M.D.            Date

164 West 3rd Street
Delta, CO 81416

_____          12/19/05
Counsel for Sam Jahani, M.D.        Date

**OFFICE OF INSPECTOR GENERAL OF THE DEPARTMENT OF HEALTH AND HUMAN SERVICES**

_____          12/23/05
Lewis Morris                        Date
Chief Counsel to the Inspector General
Office of Counsel to the Inspector General
Office of Inspector General
U. S. Department of Health and Human Services

Sam Jahani Integrity Agreement:

33