EXHIBIT C TO

BRIEF IN OPPOSITION TO
MOTION FOR PROTECTIVE ORDER

45 C.F.R. §164.512

Westlaw.

45 C.F.R. § 164.512                                                                                                          Page 1

**Effective:[See Text Amendments]**

Code of Federal Regulations Currentness
  Title 45. Public Welfare
    Subtitle A. Department of Health and Human Services (Refs & Annos)
      Subchapter C. Administrative Data Standards and Related Requirements (Refs & Annos)
        Part 164. Security and Privacy (Refs & Annos)
          Subpart E. Privacy of Individually Identifiable Health Information

➡ **§ 164.512 Uses and disclosures for which an authorization or opportunity to agree or object is not required.**

A covered entity may use or disclose protected health information without the written authorization of the individual, as described in § 164.508, or the opportunity for the individual to agree or object as described in § 164.510, in the situations covered by this section, subject to the applicable requirements of this section. When the covered entity is required by this section to inform the individual of, or when the individual may agree to, a use or disclosure permitted by this section, the covered entity's information and the individual's agreement may be given orally.

(a) Standard: Uses and disclosures required by law.

    (1) A covered entity may use or disclose protected health information to the extent that such use or disclosure is required by law and the use or disclosure complies with and is limited to the relevant requirements of such law.

    (2) A covered entity must meet the requirements described in paragraph (c), (e), or (f) of this section for uses or disclosures required by law.

(b) Standard: uses and disclosures for public health activities.

    (1) Permitted disclosures. A covered entity may disclose protected health information for the public health activities and purposes described in this paragraph to:

(i) A public health authority that is authorized by law to collect or receive such information for the purpose of preventing or controlling disease, injury, or disability, including, but not limited to, the reporting of disease, injury, vital events such as birth or death, and the conduct of public health surveillance, public health investigations, and public health interventions; or, at the direction of a public health authority, to an official of a foreign government agency that is acting in collaboration with a public health authority;

(ii) A public health authority or other appropriate government authority authorized by law to receive reports of child abuse or neglect;

(iii) A person subject to the jurisdiction of the Food and Drug Administration (FDA) with respect to an FDA-regulated product or activity for which that person has responsibility, for the purpose of activities related to the quality, safety or effectiveness of such FDA-regulated product or activity. Such purposes include:

    (A) To collect or report adverse events (or similar activities with respect to food or dietary supplements), product defects or problems (including problems with the use or labeling of a product), or biological product deviations;

    (B) To track FDA-regulated products;

    (C) To enable product recalls, repairs, or replacement, or lookback (including locating and notifying individuals who have received products that have been recalled, withdrawn, or are the subject of lookback); or

    (D) To conduct post marketing surveillance;

(iv) A person who may have been exposed to a communicable disease or may otherwise be at

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

risk of contracting or spreading a disease or condition, if the covered entity or public health authority is authorized by law to notify such person as necessary in the conduct of a public health intervention or investigation; or

(v) An employer, about an individual who is a member of the workforce of the employer, if:

    (A) The covered entity is a covered health care provider who is a member of the workforce of such employer or who provides health care to the individual at the request of the employer:

        (1) To conduct an evaluation relating to medical surveillance of the workplace; or

        (2) To evaluate whether the individual has a work-related illness or injury;

    (B) The protected health information that is disclosed consists of findings concerning a work-related illness or injury or a workplace-related medical surveillance;

    (C) The employer needs such findings in order to comply with its obligations, under 29 CFR parts 1904 through 1928, 30 CFR parts 50 through 90, or under state law having a similar purpose, to record such illness or injury or to carry out responsibilities for workplace medical surveillance; and

    (D) The covered health care provider provides written notice to the individual that protected health information relating to the medical surveillance of the workplace and work-related illnesses and injuries is disclosed to the employer:

        (1) By giving a copy of the notice to the individual at the time the health care is provided; or

        (2) If the health care is provided on the work site of the employer, by posting the notice in a prominent place at the location where the health care is provided.

(2) Permitted uses. If the covered entity also is a public health authority, the covered entity is permitted to use protected health information in all cases in which it is permitted to disclose such information for public health activities under paragraph (b)(1) of this section.

(c) Standard: Disclosures about victims of abuse, neglect or domestic violence.

    (1) Permitted disclosures. Except for reports of child abuse or neglect permitted by paragraph (b)(1)(ii) of this section, a covered entity may disclose protected health information about an individual whom the covered entity reasonably believes to be a victim of abuse, neglect, or domestic violence to a government authority, including a social service or protective services agency, authorized by law to receive reports of such abuse, neglect, or domestic violence:

    (i) To the extent the disclosure is required by law and the disclosure complies with and is limited to the relevant requirements of such law;

    (ii) If the individual agrees to the disclosure; or

    (iii) To the extent the disclosure is expressly authorized by statute or regulation and:

        (A) The covered entity, in the exercise of professional judgment, believes the disclosure is necessary to prevent serious harm to the individual or other potential victims; or

        (B) If the individual is unable to agree because of incapacity, a law enforcement or other public official authorized to receive the report represents that the protected health information for which disclosure is sought is not intended to be used against the individual and that an immediate enforcement activity that depends upon the disclosure would be materially and adversely affected by waiting until the individual is able to agree to the disclosure.

    (2) Informing the individual. A covered entity

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

that makes a disclosure permitted by paragraph (c)(1) of this section must promptly inform the individual that such a report has been or will be made, except if:

(i) The covered entity, in the exercise of professional judgment, believes informing the individual would place the individual at risk of serious harm; or

(ii) The covered entity would be informing a personal representative, and the covered entity reasonably believes the personal representative is responsible for the abuse, neglect, or other injury, and that informing such person would not be in the best interests of the individual as determined by the covered entity, in the exercise of professional judgment.

(d) Standard: Uses and disclosures for health oversight activities.

(1) Permitted disclosures. A covered entity may disclose protected health information to a health oversight agency for oversight activities authorized by law, including audits; civil, administrative, or criminal investigations; inspections; licensure or disciplinary actions; civil, administrative, or criminal proceedings or actions; or other activities necessary for appropriate oversight of:

(i) The health care system;

(ii) Government benefit programs for which health information is relevant to beneficiary eligibility;

(iii) Entities subject to government regulatory programs for which health information is necessary for determining compliance with program standards; or

(iv) Entities subject to civil rights laws for which health information is necessary for determining compliance.

(2) Exception to health oversight activities. For the purpose of the disclosures permitted by paragraph (d)(1) of this section, a health oversight activity does not include an investigation or other activity in which the individual is the subject of the investigation or activity and such investigation or other activity does not arise out of and is not directly related to:

(i) The receipt of health care;

(ii) A claim for public benefits related to health; or

(iii) Qualification for, or receipt of, public benefits or services when a patient's health is integral to the claim for public benefits or services.

(3) Joint activities or investigations. Nothwithstanding paragraph (d)(2) of this section, if a health oversight activity or investigation is conducted in conjunction with an oversight activity or investigation relating to a claim for public benefits not related to health, the joint activity or investigation is considered a health oversight activity for purposes of paragraph (d) of this section.

(4) Permitted uses. If a covered entity also is a health oversight agency, the covered entity may use protected health information for health oversight activities as permitted by paragraph (d) of this section.

(e) Standard: Disclosures for judicial and administrative proceedings.

(1) Permitted disclosures. A covered entity may disclose protected health information in the course of any judicial or administrative proceeding:

(i) In response to an order of a court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such order; or

(ii) In response to a subpoena, discovery request, or other lawful process, that is not accompanied by an order of a court or administrative tribunal, if:

(A) The covered entity receives satisfactory assurance, as described in paragraph

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

45 C.F.R. § 164.512                                                                                                                                        Page 4

(e)(1)(iii) of this section, from the party seeking the information that reasonable efforts have been made by such party to ensure that the individual who is the subject of the protected health information that has been requested has been given notice of the request; or

(B) The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iv) of this section, from the party seeking the information that reasonable efforts have been made by such party to secure a qualified protective order that meets the requirements of paragraph (e)(1)(v) of this section.

(iii) For the purposes of paragraph (e)(1)(ii)(A) of this section, a covered entity receives satisfactory assurances from a party seeking protecting health information if the covered entity receives from such party a written statement and accompanying documentation demonstrating that:

(A) The party requesting such information has made a good faith attempt to provide written notice to the individual (or, if the individual's location is unknown, to mail a notice to the individual's last known address);

(B) The notice included sufficient information about the litigation or proceeding in which the protected health information is requested to permit the individual to raise an objection to the court or administrative tribunal; and

(C) The time for the individual to raise objections to the court or administrative tribunal has elapsed, and:

(1) No objections were filed; or

(2) All objections filed by the individual have been resolved by the court or the administrative tribunal and the disclosures being sought are consistent with such resolution.

(iv) For the purposes of paragraph (e)(1)(ii)(B) of this section, a covered entity receives satisfactory assurances from a party seeking protected health information, if the covered entity receives from such party a written statement and accompanying documentation demonstrating that:

(A) The parties to the dispute giving rise to the request for information have agreed to a qualified protective order and have presented it to the court or administrative tribunal with jurisdiction over the dispute; or

(B) The party seeking the protected health information has requested a qualified protective order from such court or administrative tribunal.

(v) For purposes of paragraph (e)(1) of this section, a qualified protective order means, with respect to protected health information requested under paragraph (e)(1)(ii) of this section, an order of a court or of an administrative tribunal or a stipulation by the parties to the litigation or administrative proceeding that:

(A) Prohibits the parties from using or disclosing the protected health information for any purpose other than the litigation or proceeding for which such information was requested; and

(B) Requires the return to the covered entity or destruction of the protected health information (including all copies made) at the end of the litigation or proceeding.

(vi) Notwithstanding paragraph (e)(1)(ii) of this section, a covered entity may disclose protected health information in response to lawful process described in paragraph (e)(1)(ii) of this section without receiving satisfactory assurance under paragraph (e)(1)(ii)(A) or (B) of this section, if the covered entity makes reasonable efforts to provide notice to the individual sufficient to meet the requirements of paragraph (e)(1)(iii) of this section or to seek a qualified protective order sufficient to meet the requirements of paragraph (e)(1)(iv) of this section.

(2) Other uses and disclosures under this section.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

The provisions of this paragraph do not supersede other provisions of this section that otherwise permit or restrict uses or disclosures of protected health information.

(f) Standard: Disclosures for law enforcement purposes. A covered entity may disclose protected health information for a law enforcement purpose to a law enforcement official if the conditions in paragraphs (f)(1) through (f)(6) of this section are met, as applicable.

(1) Permitted disclosures: Pursuant to process and as otherwise required by law. A covered entity may disclose protected health information:

(i) As required by law including laws that require the reporting of certain types of wounds or other physical injuries, except for laws subject to paragraph (b)(1)(ii) or (c)(1)(i) of this section; or

(ii) In compliance with and as limited by the relevant requirements of:

(A) A court order or court-ordered warrant, or a subpoena or summons issued by a judicial officer;

(B) A grand jury subpoena; or

(C) An administrative request, including an administrative subpoena or summons, a civil or an authorized investigative demand, or similar process authorized under law, provided that:

(1) The information sought is relevant and material to a legitimate law enforcement inquiry;

(2) The request is specific and limited in scope to the extent reasonably practicable in light of the purpose for which the information is sought; and

(3) De-identified information could not reasonably be used.

(2) Permitted disclosures: Limited information for identification and location purposes. Except for disclosures required by law as permitted by paragraph (f)(1) of this section, a covered entity may disclose protected health information in response to a law enforcement official's request for such information for the purpose of identifying or locating a suspect, fugitive, material witness, or missing person, provided that:

(i) The covered entity may disclose only the following information:

(A) Name and address;

(B) Date and place of birth;

(C) Social security number;

(D) ABO blood type and rh factor;

(E) Type of injury;

(F) Date and time of treatment;

(G) Date and time of death, if applicable; and

(H) A description of distinguishing physical characteristics, including height, weight, gender, race, hair and eye color, presence or absence of facial hair (beard or moustache), scars, and tattoos.

(ii) Except as permitted by paragraph (f)(2)(i) of this section, the covered entity may not disclose for the purposes of identification or location under paragraph (f)(2) of this section any protected health information related to the individual's DNA or DNA analysis, dental records, or typing, samples or analysis of body fluids or tissue.

(3) Permitted disclosure: Victims of a crime. Except for disclosures required by law as permitted by paragraph (f)(1) of this section, a covered entity may disclose protected health information in response to a law enforcement official's request for such information about an individual who is or is suspected to be a victim of a crime, other than disclosures that are subject to paragraph (b) or (c) of this section, if:

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

(i) The individual agrees to the disclosure; or

(ii) The covered entity is unable to obtain the individual's agreement because of incapacity or other emergency circumstance, provided that:

(A) The law enforcement official represents that such information is needed to determine whether a violation of law by a person other than the victim has occurred, and such information is not intended to be used against the victim;

(B) The law enforcement official represents that immediate law enforcement activity that depends upon the disclosure would be materially and adversely affected by waiting until the individual is able to agree to the disclosure; and

(C) The disclosure is in the best interests of the individual as determined by the covered entity, in the exercise of professional judgment.

(4) Permitted disclosure: Decedents. A covered entity may disclose protected health information about an individual who has died to a law enforcement official for the purpose of alerting law enforcement of the death of the individual if the covered entity has a suspicion that such death may have resulted from criminal conduct.

(5) Permitted disclosure: Crime on premises. A covered entity may disclose to a law enforcement official protected health information that the covered entity believes in good faith constitutes evidence of criminal conduct that occurred on the premises of the covered entity.

(6) Permitted disclosure: Reporting crime in emergencies.

(i) A covered health care provider providing emergency health care in response to a medical emergency, other than such emergency on the premises of the covered health care provider, may disclose protected health information to a law enforcement official if such disclosure appears necessary to alert law enforcement to:

(A) The commission and nature of a crime;

(B) The location of such crime or of the victim(s) of such crime; and

(C) The identity, description, and location of the perpetrator of such crime.

(ii) If a covered health care provider believes that the medical emergency described in paragraph (f)(6)(i) of this section is the result of abuse, neglect, or domestic violence of the individual in need of emergency health care, paragraph (f)(6)(i) of this section does not apply and any disclosure to a law enforcement official for law enforcement purposes is subject to paragraph (c) of this section.

(g) Standard: Uses and disclosures about decedents.

(1) Coroners and medical examiners. A covered entity may disclose protected health information to a coroner or medical examiner for the purpose of identifying a deceased person, determining a cause of death, or other duties as authorized by law. A covered entity that also performs the duties of a coroner or medical examiner may use protected health information for the purposes described in this paragraph.

(2) Funeral directors. A covered entity may disclose protected health information to funeral directors, consistent with applicable law, as necessary to carry out their duties with respect to the decedent. If necessary for funeral directors to carry out their duties, the covered entity may disclose the protected health information prior to, and in reasonable anticipation of, the individual's death.

(h) Standard: Uses and disclosures for cadaveric organ, eye or tissue donation purposes. A covered entity may use or disclose protected health information to organ procurement organizations or other entities engaged in the procurement, banking, or transplantation of cadaveric organs, eyes, or tissue for the purpose of facilitating organ, eye or tissue donation and transplantation.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

(i) Standard: Uses and disclosures for research purposes.

(1) Permitted uses and disclosures. A covered entity may use or disclose protected health information for research, regardless of the source of funding of the research, provided that:

(i) Board approval of a waiver of authorization. The covered entity obtains documentation that an alteration to or waiver, in whole or in part, of the individual authorization required by § 164.508 for use or disclosure of protected health information has been approved by either:

(A) An Institutional Review Board (IRB), established in accordance with 7 CFR lc.107, 10 CFR 745.107, 14 CFR 1230.107, 15 CFR 27.107, 16 CFR 1028.107, 21 CFR 56.107, 22 CFR 225.107, 24 CFR 60.107, 28 CFR 46.107, 32 CFR 219.107, 34 CFR 97.107, 38 CFR 16.107, 40 CFR 26.107, 45 CFR 46.107, 45 CFR 690.107, or 49 CFR 11.107; or

(B) A privacy board that:

(1) Has members with varying backgrounds and appropriate professional competency as necessary to review the effect of the research protocol on the individual's privacy rights and related interests;

(2) Includes at least one member who is not affiliated with the covered entity, not affiliated with any entity conducting or sponsoring the research, and not related to any person who is affiliated with any of such entities; and

(3) Does not have any member participating in a review of any project in which the member has a conflict of interest.

(ii) Reviews preparatory to research. The covered entity obtains from the researcher representations that:

(A) Use or disclosure is sought solely to review protected health information as necessary to prepare a research protocol or for similar purposes preparatory to research;

(B) No protected health information is to be removed from the covered entity by the researcher in the course of the review; and

(C) The protected health information for which use or access is sought is necessary for the research purposes.

(iii) Research on decedent's information. The covered entity obtains from the researcher:

(A) Representation that the use or disclosure sought is solely for research on the protected health information of decedents;

(B) Documentation, at the request of the covered entity, of the death of such individuals; and

(C) Representation that the protected health information for which use or disclosure is sought is necessary for the research purposes.

(2) Documentation of waiver approval. For a use or disclosure to be permitted based on documentation of approval of an alteration or waiver, under paragraph (i)(1)(i) of this section, the documentation must include all of the following:

(i) Identification and date of action. A statement identifying the IRB or privacy board and the date on which the alteration or waiver of authorization was approved;

(ii) Waiver criteria. A statement that the IRB or privacy board has determined that the alteration or waiver, in whole or in part, of authorization satisfies the following criteria:

(A) The use or disclosure of protected health information involves no more than a minimal risk to the privacy of individuals, based on, at least, the presence of the following

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

elements;

(1) An adequate plan to protect the identifiers from improper use and disclosure;

(2) An adequate plan to destroy the identifiers at the earliest opportunity consistent with conduct of the research, unless there is a health or research justification for retaining the identifiers or such retention is otherwise required by law; and

(3) Adequate written assurances that the protected health information will not be reused or disclosed to any other person or entity, except as required by law, for authorized oversight of the research study, or for other research for which the use or disclosure of protected health information would be permitted by this subpart;

(B) The research could not practicably be conducted without the waiver or alteration; and

(C) The research could not practicably be conducted without access to and use of the protected health information.

(iii) Protected health information needed. A brief description of the protected health information for which use or access has been determined to be necessary by the IRB or privacy board has determined, pursuant to paragraph (i)(2)(ii)(C) of this section;

(iv) Review and approval procedures. A statement that the alteration or waiver of authorization has been reviewed and approved under either normal or expedited review procedures, as follows:

(A) An IRB must follow the requirements of the Common Rule, including the normal review procedures (7 CFR 1c.108(b), 10 CFR 745.108(b), 14 CFR 1230.108(b), 15 CFR 27.108(b), 16 CFR 1028.108(b), 21 CFR 56.108(b), 22 CFR 225.108(b), 24 CFR 60.108(b), 28 CFR 46.108(b), 32 CFR 219.108(b), 34 CFR 97.108(b), 38 CFR 16.108(b), 40 CFR 26.108(b), 45 CFR 46.108(b), 45 CFR 690.108(b), or 49 CFR 11.108(b)) or the expedited review procedures (7 CFR 1c.110, 10 CFR 745.110, 14 CFR 1230.110, 15 CFR 27.110, 16 CFR 1028.110, 21 CFR 56.110, 22 CFR 225.110, 24 CFR 60.110, 28 CFR 46.110, 32 CFR 219.110, 34 CFR 97.110, 38 CFR 16.110, 40 CFR 26.110, 45 CFR 46.110, 45 CFR 690.110, or 49 CFR 11.110);

(B) A privacy board must review the proposed research at convened meetings at which a majority of the privacy board members are present, including at least one member who satisfies the criterion stated in paragraph (i)(1)(i)(B)(2) of this section, and the alteration or waiver of authorization must be approved by the majority of the privacy board members present at the meeting, unless the privacy board elects to use an expedited review procedure in accordance with paragraph (i)(2)(iv)(C) of this section;

(C) A privacy board may use an expedited review procedure if the research involves no more than minimal risk to the privacy of the individuals who are the subject of the protected health information for which use or disclosure is being sought. If the privacy board elects to use an expedited review procedure, the review and approval of the alteration or waiver of authorization may be carried out by the chair of the privacy board, or by one or more members of the privacy board as designated by the chair; and

(v) Required signature. The documentation of the alteration or waiver of authorization must be signed by the chair or other member, as designated by the chair, of the IRB or the privacy board, as applicable.

(j) Standard: Uses and disclosures to avert a serious threat to health or safety.

(1) Permitted disclosures. A covered entity may, consistent with applicable law and standards of

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

ethical conduct, use or disclose protected health information, if the covered entity, in good faith, believes the use or disclosure:

(i)(A) Is necessary to prevent or lessen a serious and imminent threat to the health or safety of a person or the public; and

    (B) Is to a person or persons reasonably able to prevent or lessen the threat, including the target of the threat; or

(ii) Is necessary for law enforcement authorities to identify or apprehend an individual:

    (A) Because of a statement by an individual admitting participation in a violent crime that the covered entity reasonably believes may have caused serious physical harm to the victim; or

    (B) Where it appears from all the circumstances that the individual has escaped from a correctional institution or from lawful custody, as those terms are defined in § 164.501.

(2) Use or disclosure not permitted. A use or disclosure pursuant to paragraph (j)(1)(ii)(A) of this section may not be made if the information described in paragraph (j)(1)(ii)(A) of this section is learned by the covered entity:

(i) In the course of treatment to affect the propensity to commit the criminal conduct that is the basis for the disclosure under paragraph (j)(1)(ii)(A) of this section, or counseling or therapy; or

(ii) Through a request by the individual to initiate or to be referred for the treatment, counseling, or therapy described in paragraph (j)(2)(i) of this section.

(3) Limit on information that may be disclosed. A disclosure made pursuant to paragraph (j)(1)(ii)(A) of this section shall contain only the statement described in paragraph (j)(1)(ii)(A) of this section and the protected health information described in paragraph (f)(2)(i) of this section.

(4) Presumption of good faith belief. A covered entity that uses or discloses protected health information pursuant to paragraph (j)(1) of this section is presumed to have acted in good faith with regard to a belief described in paragraph (j)(1)(i) or (ii) of this section, if the belief is based upon the covered entity's actual knowledge or in reliance on a credible representation by a person with apparent knowledge or authority.

(k) Standard: Uses and disclosures for specialized government functions.

    (1) Military and veterans activities.

    (i) Armed Forces personnel. A covered entity may use and disclose the protected health information of individuals who are Armed Forces personnel for activities deemed necessary by appropriate military command authorities to assure the proper execution of the military mission, if the appropriate military authority has published by notice in the Federal Register the following information:

        (A) Appropriate military command authorities; and

        (B) The purposes for which the protected health information may be used or disclosed.

    (ii) Separation or discharge from military service. A covered entity that is a component of the Departments of Defense or Transportation may disclose to the Department of Veterans Affairs (DVA) the protected health information of an individual who is a member of the Armed Forces upon the separation or discharge of the individual from military service for the purpose of a determination by DVA of the individual's eligibility for or entitlement to benefits under laws administered by the Secretary of Veterans Affairs.

    (iii) Veterans. A covered entity that is a component of the Department of Veterans Affairs may use and disclose protected health information to components of the Department that determine eligibility for or entitlement to, or that provide, benefits under the laws administered by the Sec-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

retary of Veterans Affairs.

(iv) Foreign military personnel. A covered entity may use and disclose the protected health information of individuals who are foreign military personnel to their appropriate foreign military authority for the same purposes for which uses and disclosures are permitted for Armed Forces personnel under the notice published in the Federal Register pursuant to paragraph (k)(1)(i) of this section.

(2) National security and intelligence activities. A covered entity may disclose protected health information to authorized federal officials for the conduct of lawful intelligence, counter-intelligence, and other national security activities authorized by the National Security Act (50 U.S.C. 401, et seq.) and implementing authority (e.g., Executive Order 12333).

(3) Protective services for the President and others. A covered entity may disclose protected health information to authorized federal officials for the provision of protective services to the President or other persons authorized by 18 U.S.C. 3056, or to foreign heads of state or other persons authorized by 22 U.S.C. 2709(a)(3), or to for the conduct of investigations authorized by 18 U.S.C. 871 and 879.

(4) Medical suitability determinations. A covered entity that is a component of the Department of State may use protected health information to make medical suitability determinations and may disclose whether or not the individual was determined to be medically suitable to the officials in the Department of State who need access to such information for the following purposes:

(i) For the purpose of a required security clearance conducted pursuant to Executive Orders 10450and 12698;

(ii) As necessary to determine worldwide availability or availability for mandatory service abroad under sections 101(a)(4) and 504 of the Foreign Service Act; or

(iii) For a family to accompany a Foreign Service member abroad, consistent with section 101(b)(5) and 904 of the Foreign Service Act.

(5) Correctional institutions and other law enforcement custodial situations.

(i) Permitted disclosures. A covered entity may disclose to a correctional institution or a law enforcement official having lawful custody of an inmate or other individual protected health information about such inmate or individual, if the correctional institution or such law enforcement official represents that such protected health information is necessary for:

   (A) The provision of health care to such individuals;

   (B) The health and safety of such individual or other inmates;

   (C) The health and safety of the officers or employees of or others at the correctional institution;

   (D) The health and safety of such individuals and officers or other persons responsible for the transporting of inmates or their transfer from one institution, facility, or setting to another;

   (E) Law enforcement on the premises of the correctional institution; and

   (F) The administration and maintenance of the safety, security, and good order of the correctional institution.

(ii) Permitted uses. A covered entity that is a correctional institution may use protected health information of individuals who are inmates for any purpose for which such protected health information may be disclosed.

(iii) No application after release. For the purposes of this provision, an individual is no longer an inmate when released on parole, probation, supervised release, or otherwise is no longer in lawful custody.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

(6) Covered entities that are government programs providing public benefits.

(i) A health plan that is a government program providing public benefits may disclose protected health information relating to eligibility for or enrollment in the health plan to another agency administering a government program providing public benefits if the sharing of eligibility or enrollment information among such government agencies or the maintenance of such information in a single or combined data system accessible to all such government agencies is required or expressly authorized by statute or regulation.

(ii) A covered entity that is a government agency administering a government program providing public benefits may disclose protected health information relating to the program to another covered entity that is a government agency administering a government program providing public benefits if the programs serve the same or similar populations and the disclosure of protected health information is necessary to coordinate the covered functions of such programs or to improve administration and management relating to the covered functions of such programs.

(l) Standard: Disclosures for workers' compensation. A covered entity may disclose protected health information as authorized by and to the extent necessary to comply with laws relating to workers' compensation or other similar programs, established by law, that provide benefits for work-related injuries or illness without regard to fault.

[67 FR 53270, Aug. 14, 2002]

SOURCE: 65 FR 50365, Aug. 17, 2000; 65 FR 82802, Dec. 28, 2000; 66 FR 12434, Feb. 26, 2001; 68 FR 8374, Feb. 20, 2003; 71 FR 8433, Feb. 16, 2006; 74 FR 42767, Aug. 24, 2009, unless otherwise noted.

AUTHORITY: 42 U.S.C. 1320d-1320d-8; sec. 264, Public Law 104-191, 110 Stat. 2033-2034 (42 U.S.C. 1320-2 (note)); secs. 13400 and 13402, Public Law 111-5, 123 Stat. 258-263.

45 C. F. R. § 164.512, 45 CFR § 164.512

Current through February 12, 2010; 75 FR 6995

© 2010 Thomson Reuters
END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.