**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.  09-CV-01063 REB-KMT

**TONYA CREEL,**
Plaintiff,

v.

**SAM JAHANI, D.O.**, and **URGENT CARE, INC., a Colorado Corporation**
Defendants.

_____

**MOTION FOR *IN CAMERA* REVIEW**
_____

Defendants, pursuant to F.R.E. 104(a) and D.C.Colo.LCivR. 7.1, move this Court to review *in camera* engagement letters between Susan Thurston and the law firm of Broad and Cassel for the reasons and on the grounds stated below:

1. Pursuant to D.C.Colo.LCivR 7.1A, the parties have discussed the relief sought by this Motion and Plaintiff opposes the relief requested herein.

2. On March 15, 2010, Defendants filed a Motion for Protective Order.  (Doc. 49) Later this same day, the Court set a hearing on the Motion for May 4, 2010. (Doc. 51).  On April 1, 2010, Plaintiff filed an opposition to Defendants' Motion. (Doc. 53).

3. Federal Rule of Evidence 104(a) states that questions concerning the existence of a privilege shall be determined by the Court.  *F.R.E. 104(a)*.  And the Court is permitted to review documents *in camera* to determine the existence of a privilege.  *United States v. Zolin*, 491 U.S. 554, 565-569 (1989) (permitting *in camera* review to determine whether crime-fraud exception exists); *Williams v. Broaddus*, 331 Fed. Appx. 560, 562, 2009 WL 1395463, **2 (10th

Cir.) ("in camera review is an appropriate method of determining whether documents are privileged") (Attached as Ex. 1).

4.      In her opposition brief to Defendants' Motion for Protective Order, Plaintiff claims that it is a "fact" "that the Defendants contracted with Ms. Thurston," *see ¶ 5 of Pl.'s Brief in Opp. to Defs.' Mot. for P.O.*, and that it is a "fact" that it was necessary for Ms. Thurston to maintain her independence from Dr. Jahani's attorneys. S*ee ¶ 6 of Pl.'s Brief in Opp. to Defs.' Mot. for P.O.* Neither of these asserted "facts" is true. To make this assertion of "fact" Plaintiff asks the Court to disregard Dr. Jahani's testimony stating that Ms. Thurston had an agreement with his attorneys, not him. S*ee fn. 1 of Pl.'s Brief in Opp. to Defs.' Mot. for P.O.*

5.      In fact, it was Dr. Jahani's attorneys that retained Ms. Thurston. And this is consistent with Dr. Jahani's testimony that an agreement existed between Ms. Thurston and his attorneys. *See Ex. B to Pl.'s Brief in Opp. to Defs.' Mot. for P.O., 117: 8-11*("Yes, I believe actually the contract is between her and my attorney to be exact. I don't think it's a contract between Sam Jahani and Ms. Thurston." *And Ex. B to Pl.'s Brief in Opp. 118: 4-13* ("Q. (By Mr. Lafond) Let's forget the particulars. To the best of your knowledge, does any contract exist between Ms. Thurston and your lawyers? A. Between Ms. Thurston and my attorney, yes, I believe it does. Q. And it is true, is it not, that there is also a contract between you and Ms. Thurston? A. That's the part I couldn't answer. I truly couldn't remember because I believe all the contracts are between her and my attorneys.").

6.      Despite Dr. Jahani's testimony, Plaintiff makes it clear in her brief that she intends to dispute it was Dr. Jahani's attorneys that retained Ms. Thurston at the hearing. This

fact is critical to the Court's determination of whether to grant Defendants' Motion for Protective Order, because it is strong evidence that Ms. Thurston's communications with Dr. Jahani and his attorneys is protected by the attorney-client privilege, and that the work performed by Ms. Thurston was at the direction of Dr. Jahani's attorneys, supporting Defendants' argument that her work is protected by the attorney work-product privilege.

7. Defendants have engagement letters in their possession which they believe will resolve this factual dispute, however those letters are protected by the attorney-client privilege as explained in Defendants' Motion for Protective Order.  *See* Doc. 49.

8. Therefore, Defendants request the Court to allow Defendants to submit these letters outlining the terms under which Ms. Thurston was retained by Dr. Jahani's attorneys for *in camera* review.  Such review will serve the purpose of determining whether Dr. Jahani, or his attorneys, retained Ms. Thurston and as evidence of the scope and reasoning for Ms. Thurston's retention.  Such review with promote judicial economy by eliminating the need to debate this issue at the hearing and it will promote justice as the engagement letters will serve as tangible proof regarding the terms under which Ms. Thurston was retained.

9. Defendants propose that the engagement letters be sent to chambers via e-mail.

WHEREFORE, Defendants respectfully request the Court to grant its Motion for *in camera* review of Ms. Thurston's engagement letters and to consider these documents as evidence in support of Defendants' Motion for Protective Order.

Respectfully submitted this 30th day of April, 2010.

                 __s/Jim C. Colling_____
                 Jim C. Colling, #38300
                 BECHTEL & SANTO, LLP
                 205 N. 4th St., Suite 300
                 Grand Junction, CO  81501
                 Telephone: (970) 683-5888
                 Attorneys for Defendants

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 30, 2010, I electronically filed **DEFENDANTS' MOTION FOR *IN CAMERA* REVIEW** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Michael S. Porter, Esq.
4465 Kipling Street
Wheat Ridge, CO 80033
E-mail: porterlaw@comcast.net

Richard C. LaFond, Esq.
Richard C. LaFond, P.C.
1756 Gilpin Street
Denver, CO 80202
E-mail: richardlafondpc@gmail.com

                 s/Jamie D. Wehling_____
                 Jamie D. Wehling